MANITOWOC COUNTY (GOEDGEN v.). See Case No. 5,501.

MANITOWOC DOCK CO. v. The CHRISTOPHER NORTH. See Case No. 2,707.

# Case No. 9,030.

## MANKIN v. CHANDLER et al.

[2 Brock. 125.] [1]

Circuit Court, E. D. Virginia. Nov. Term, 1823.

JUDGMENT—RES JUDICATA—ESTOPPEL—ATTACHMENT—NONRESIDENT DEBTOR.

Where process is to be served on the thing itself which is the subject of controversy, and

---

[1] [Reported by John W. Brockenbrough, Esq.]

where the mere possession of the thing itself by the service of that process, and making proclamation, authorizes the court to decide upon it without notice to any individual whatever, it is a proceeding in rem, to which all the world are parties, and in every such case, the decree is conclusive evidence against all parties interested, though not brought before the court by process. But a foreign attachment (under the law of Virginia, see Rev. Code 1819, c. 123, p. 474), is not a proceeding in rem. It is a suit by a plaintiff against defendants, and a decree in such a case is conclusive evidence only against parties and privies. Thus, C. being indebted to W., gave his note for the amount, and W. assigned the note to M., and W. afterwards left the country. R., a creditor of W., attached the effects of W. in the hands of C. C. had notice of the assignment of his note to M. A decree was rendered in favour of R. M. subsequently brought suit upon the note against C., but the decree was satisfied before service of the process in the second suit. C. pleaded the decree in favour of R., in bar of M.'s right of action, and to this plea, M. demurred. The court sustained the demurrer, on the ground, that a decree rendered in a suit between two parties, is not admissible evidence in a suit between one of those parties and a third party. But the court *held*, that if M. had been a party to the first suit, the decree would have operated a bar, and the demurrer would have been overruled.

[Cited in Cole v. Brandt, Case No. 2,978; Smith v. Miln, Id. 13,081; Miller v. U. S., 11 Wall. (78 U. S.) 328; Alabama & C. R. Co. v. Jones, Case No. 127; Michaels v. Post, 21 Wall. (88 U. S.) 428.]

[Cited in Smith v. Blatchford, 2 Ind. 186, 52 Am. Dec. 506; Bruff v. Thompson (W. Va.) 6 S. E. 359; Street v. Augusta Ins. & B. Co., 12 Rich. Law, 13; 75 Am. Dec. 715. Cited in brief in Burtners v. Keran, 24 Grat. 51. Cited in Holly River Coal Co. v. Howell, 36 W. Va. 503, 15 S. E. 218; Brown v. Smart, 69 Md. 333, 14 Atl. 472, and 17 Atl. 1101; Rigney v. Rigney, 127 N. Y. 412, 28 N. E. 406.]

At law.

MARSHALL, Circuit Justice. This is an action of debt, brought by the plaintiff, as assignee of —— Walsh, on a note given by the defendants to Walsh on the 10th of October, 1818. The defendants plead in bar, a decree made by the county court of Westmoreland, sitting in chancery, in a suit brought by Thomas Rowand, a creditor of the said Walsh, against the said Walsh and the defendant John Chandler, to attach the effects of the said Walsh in the hands of the said Chandler, and subject them to the payment of the debt due from Walsh to Rowand. The record of the proceedings in that suit, forms a part of the plea, and shows that the note was assigned anterior to the answer of the defendant, and that he had notice of the assignment. The decree directs the defendant, John Chandler, to pay to Thomas Rowand, out of the note given by John Chandler & Co. to Walsh, the sum which was shown to be due from Walsh to Rowand; and the decree was enforced before the service of process in this cause.

To this plea the plaintiff has demurred, and the defendants have joined in demurrer.

It is admitted that the decree of the county court of Westmoreland is erroneous, and would, unquestionably, be reversed if carried before a superior tribunal. But this court can take no notice of its errors. While it remains in force, it binds the subject as conclusively as it would do, had it been affirmed in the highest court in the country. The question is, can it affect the rights of the plaintiff in this cause? for if it can, it concludes them.

In support of the demurrer, it is argued, that this decree cannot be given in evidence in this cause, as the plaintiff is neither a party nor a privy, it not being alleged that the assignment, or notice of it, was subsequent to the attachment.

The rule relied on by the plaintiff is familiar to every gentleman of the profession, and has not been controverted; but the defendant's counsel insists that this is a case to which that rule does not apply, because it is not within the ordinary jurisdiction of a court of chancery, but a case of which that court takes cognizance, by virtue of a statute, and is, in its nature, a proceeding in rem, and not in personam. It is, he says, a sentence on the thing itself, and not a decree against the person, and that in all cases of this description, the subject matter is bound by the sentence, and the title of those who are not particularly before the court, is as entirely decided, as the title of those who are. In support of this rule, he referred to the effect of decisions in the courts of admiralty, and in the court of exchequer, in England, which courts entertain suits in rem, to which all the world are said to be parties.

The principle on which the defendant relies, is as little to be questioned as that asserted by the plaintiff. The whole inquiry is, to which class of cases does that under consideration belong? What is the nature of a proceeding in rem? And in what does its specific difference from an ordinary action consist? Is every action in which a specific article is demanded a proceeding in rem? If it were, a writ of right which demands lands, of detinue which demands a personal chattel, would be a proceeding in rem, to which all the world would be parties, and by which the rights of all the world would be bound. But this, all know, is not the law. What, then, is the rule by which cases of this description are to be ascertained?

I have always understood that where the process is to be served on the thing itself, and where the mere possession of the thing itself, by the service of the process and making proclamation, authorizes the court to decide upon it without notice to any individual whatever, it is a proceeding in rem, to which all the world are parties. The rule is one of convenience and of necessity. In cases to which it applies, it would often be impossible to ascertain the person whose property is proceeded against, and it is presumable that the person whose property is seized, is either himself attentive to it, or has placed it in the care of some person who has the power, and

whose duty it is, to represent him and assert his claim. Such claim may be asserted; but the jurisdiction of the court does not depend on its assertion. The claimant is a party, whether he speaks or is silent; whether he asserts his claim or abandons it.

Thus, in the case of Scott v. Shearman, 2 W. Bl. 977, which was an action of trespass against the officer who had seized goods which were condemned in the court of exchequer, Judge Blackstone says, "the sentence of condemnation is conclusive evidence in a case in which no notice was given to the owner in person, who was not a party to the suit, because the seizure itself is notice to the owner, who is presumed to know whatever becomes of his own goods. He knew they were seized by a revenue officer. He knew they were carried to the king's warehouse. He knew, or might have known, that by the course of law, the validity of that seizure would come on to be examined in the court of exchequer, and could be examined nowhere else. He had notice by the two proclamations, according to the course of that court. He had notice by the writ of appraisement, which must be publicly executed on the spot where the goods were detained. And having neglected this opportunity of putting in his claim and trying the point of forfeiture, it was his own laches, and he shall for ever be concluded by it." But in every case where parties are necessary to give the court cognizance of the cause, the decree, the judgment, or the sentence, binds those only (with some few exceptions standing on particular principles), who are parties or privies to it. If a party is necessary, it follows that the party should be one who has the real interest; and to secure this, the interest of persons who are not parties cannot be affected. This is understood to be as true with respect to cases in the courts of admiralty and of the exchequer, as in courts of common law and chancery. If a case be cognizable in either of those courts, in consequence of the seizure which vests the possession, and of a general proclamation of that fact, every person is a party to the proceeding, and his interest is bound by the sentence; but in a case in which the law requires that parties should be brought before the court, the sentence binds those only who are parties.

If this be the rule, it remains only to examine the act of assembly which gives this remedy, in order to ascertain its character. The law enacts,[2] that "if in any case which hath been or shall hereafter be commenced, for relief in equity in any superior court of chancery, or in any other court, against any defendant or defendants, who are out of this country and others within the same, having in their hands effects of, or otherwise indebted to, such absent defendant or defendants, or against any such absent defendant or defendants, having lands or tenements within

the commonwealth, and the appearance of such absentees be not entered, &c.," "in all such cases the court may make any order, &c." The act then proceeds to make publication equivalent to service of the process, so far as is necessary to enable the court to decree in the cause.

The process, then, given by the act of assembly in the particular case, is not against the thing, but the person. It is in a suit brought against a defendant not residing in the country, and having effects within it, that this proceeding is allowed; and of course, the foreign defendant must be named in the subpoena and in the bill. The questions to be decided by the court in every such case are—is the foreign defendant indebted to the plaintiff, and are the attached effects his property? The plaintiff must establish both of these facts, and the defendants may controvert them. It is, then, a case which, by the very words of the law, is a suit between parties by which the rights of the individuals before the court are to be examined and determined. The law substitutes publication for service of process on the absent defendant, which shall give the court jurisdiction over the cause, and enable it to make a decree for the payment of the debt, which is chargeable on his effects in the hands of the garnishee. No reason can be assigned why this decree should bind a person who is not a party nor privy to it, which does not apply to every case. No reason can be given for the rule which does not apply to this case.

It is, we are told, excessive oppression that a court of justice should decree a man to pay a sum of money, and after enforcing its decree, compel him to pay the money a second time to another person. This is admitted; but it is also oppression to decree the money of A. to B.; every illegal and unrighteous judgment of a court is oppression. The law presumes no such judgment to be given; but if it be given, the law deems it more reasonable that the loss should fall on a person who was a party to the suit, who could assert his rights and controvert the decision, than on him who was not a party to it, and who had no opportunity of controverting it. Had Mankin been a party to the suit in Westmoreland county court, the decree would have bound him, had it been as iniquitous as it now appears to be; but not being a party, the rule of law protects him from its operation.

It has been truly said, that our law respecting foreign attachments, is founded on the same proceeding in London, which is established by custom. Some inconsiderable difference exists as to the manner of proceeding against the absent defendants, which has no bearing on the question arising in this case; as to that question, the law is the same. The case of M'Daniel v. Hughes, 3 East, 367, goes fully into the law on this subject; in that case, as in this, a decree of the court was pleaded in bar to an action brought

---

[2] See Rev. Code Va. 1819, c. 123, p. 474.

by the foreign defendant himself against his debtor, and in that case, too, a demurrer was filed to the plea. It was contended in argument, "that three parties are necessary in a foreign attachment—the plaintiff, the defendant, and a garnishee. The plaintiff must prove his debt, the defendant must have due notice of the process against him, and the garnishee must be in actual possession of the defendant's property which is to be attached." The law, as laid down for the plaintiff, was not controverted; but it was insisted that, according to the custom, the return of nihil authorized the attachment; and of this opinion was the court, and for this reason the demurrer was overruled. The person who claimed the property was in that case a party to the suit, and such proceedings were had against him as, according to the custom, authorized the court to pronounce judgment in the case. He was precisely in the same situation as the plaintiff in this case would have been, had he been named as a defendant in the subpoena, and been included in the publication. Had this essential circumstance been wanting in the case of M'Daniel v. Hughes, it is apparent from the whole report, that the demurrer must have been sustained.

Upon the best examination I have been able to make of the cases which have been cited, as well as upon principle, I am perfectly satisfied. that a foreign attachment is not to be considered as a proceeding in rem, but as a suit by the plaintiff against defendants, and that a decree in such cases is within the general rule of being conclusive evidence only against parties and privies. The demurrer, therefore, is sustained.

NOTE. In Kelso v. Blackburn, 3 Leigh, 306, Carr. J., said. that "the proceeding by foreign attachment, against absentees, was an innovation upon the common law; a proceeding in rem founded on the necessity of the case, lest there should be an absolute failure of justice, and like all ex parte proceedings, it was liable to great abuse, unless carefully watched and strictly confined to the ground covered by the law. It was not under their general jurisdiction that courts of equity took cognizance of those cases, but under particular statutes; and these, it would be found, had, with special care, marked out the extent and described the manner of the proceeding." It is very apparent, from an examination of the case of Kelso v. Blackburn, that Judge Carr did not intend to say, that the proceeding by foreign attachment, in Virginia, was, in the strictest sense of the term, and to all intents, a proceeding in rem, but simply that it was in the nature of a proceeding in rem. The question in that case was, whether the essential circumstance of the non-residence of the debtor was set forth with sufficient distinctness in the complainant's bill, the foundation of the jurisdiction of the court being the non-residence of the debtor, and his having effects in Virginia. If, because cognizance of the proceeding in foreign attachment was not taken by courts of equity, by virtue of their "general jurisdiction," but under "particular statutes," and because it was "liable to great abuse," the proceeding should be "carefully watched and strictly confined to the ground covered by the law," it is clear that the judge did not intend to lay down the general proposition in a sense which would abolish the familiar rule of evidence, that judgments or decrees are only evidence against parties and privies, in a sense which would give a decree in a proceeding by foreign attachment. a more extended operation against third persons than an ordinary decree of a court of equity. It is most obvious, that the learned judge, in speaking of the liability to abuse, in the proceedings by foreign attachment under an act of assembly, "like all other ex parte proceedings," had reference to the absent defendant himself (and to none other), against whom, from the very necessity of the case. the law was compelled to substitute the formal and constructive notice by publication, for the actual service of process required in the case of home defendants.