BENJAMIN NASON *versus* JOSEPH GRANT & *al.*

When land is attached, and the attachment is preserved, and the execution, issued upon the judgment recovered in that suit, is legally levied on it; such levy operates as a statute conveyance of the land at the time of making the attachment, and places the creditor in the same position, as if the debtor had conveyed to him for value at the time of making his attachment.

When there proves to be an unrecorded mortgage of land attached, the proper course is to levy upon the fee, and not to sell the equity, if the creditor is entitled and intends to take the estate against the claim of the mortgagee.

The cancellation of an unrecorded deed by the consent of parties to it may operate to restore the estate to the grantee, if the rights of third persons have not intervened; but it cannot have that or any other effect against the rights of such third parties.

WRIT of entry against Joseph Grant and Joseph Grant, jr., demanding a tract of land in Shapleigh. Grant, sen. pleaded non-tenure, and replication was made that he was in possession. Grant, jr. pleaded the general issue, which was joined.

The case was opened for trial, when the demandant proved, that the demanded premises were attached October 15, 1838, on a writ in favor of the demandant against Grant, sen.; that judgment was duly recovered in the action at the Oct. term 1839, Western District Court, for this county; that execution issued thereon, and was regularly levied on the demanded premises, as the property of Grant, sen. within thirty days of the time of judgment, and seisin delivered. The proceedings were recorded within ninety days.

The demandant then called R. Buck, who testified, that he once owned the premises; and on October 13, 1836, gave a deed thereof to Grant, sen. with other lands, constituting the farm on which the tenants now live and have lived since the Spring of 1837, and at the same time, took back a mortgage from him to secure notes amounting to $1025, part of the consideration, and the whole thereof, excepting about one hundred dollars, then paid him by J. Grant, jr. and W. Grant, sons of Grant, sen. and then both minors; that nothing had since been paid to him; that on January 12, 1839, neither the deed nor mortgage back having been recorded, at the request of Grant,

sen. and his two sons, he, having no knowledge of any attachment thereon, took back and cancelled the deed of the farm including the demanded premises, and gave up the notes secured by the mortgage to be cancelled, and made a deed to Grant, jr., the tenant, and W. Grant, and took back from them a mortgage to secure the payment of all the original purchase money, excepting the $100, paid ; and that the deed from him to Grant was given back and cancelled, and a new one given principally to save expense.

The parties then agreed to take the case from the jury, and submit the same on this evidence as a statement of facts ; and that the Court might render such judgment as the facts would warrant.

*W. A. Hayes*, and *F. B. Hayes* of Boston, for the plaintiff, contended : —

At the time of the attachment, the title in the premises demanded was, as to attaching creditors, in Joseph Grant, sen. He entered into and occupied the land under a deed to him, and was in such occupation at the time the attachment was made. 13 Maine R. 280 ; 1 Marshall, 280 ; 2 J. J. Marshall, 433 ; 2 Bibb, 423 ; 3 Marshall, 12. The occupation of the premises by Grant, openly and peaceably, was equivalent to the registry of the deed. *Webster* v. *Maddox*, 6 Greenl. 258 ; St. 1821. c. 36, § 1 ; *Priest* v. *Rice*, 1 Pick. 168 ; 7 Watts, 261 ; 10 Watts, 412. And as to attaching creditors, the estate was absolutely in Grant, and not merely the equity of redemption. A mortgage must be recorded to be valid against creditors who have no notice of it. 7 Dana, 258 ; 9 Dana, 390, 69, 77 ; 1 Wash. 319, 58 ; 3 Hen. & Munf. 232 ; 4 Hen. & Munf. 424 ; 3 Gill. & John. 426 ; Martin & Gerger, 385 ; 7 Cowen, 360 ; *Priest* v. *Rice*, 1 Pick. 168 ; *Trull* v. *Skinner*, 17 Pick. 213.

The cancellation of the deed from Buck to Grant, though done with the assent of both parties thereto, did not divest the property, if the rights of third persons, as in the present case, had previously attached to the estate. *Farrar* v. *Farrar*, 4

N. H. R. 195; Co. Lit. 225, b. note 136; 1 R. in Ch. 100; Gilb. R. 236; Sheppard's Touch. 69, 70; 3 T. R. 151; 2 Lev. 113; 1 Vent. 296; 7 Bro. Parl. Ca. 410; Cro. Jac. 399; 1 Atk. 520; Gilb. Ev. 109; 2 H. Black. 259; 3 Cruise Dig. Tit. 32, Deed, § 10; 2 Vern. 473; Ambl. 429; 6 East, 86; 4 B. & Ald. 672; 1 Johns. Ch. R. 417; 2 Johns. R. 86; 8 Cowen, 71; 7 Wend. 364; 4 Conn. R. 550; 5 Conn. R. 262; 4 Gerger, 375; 6 Mass. R. 24; 9 Mass. R. 312; 11 Mass. R. 332; 9 Pick. 105; 23 Pick. 231; 1 Greenl. 73; 17 Pick. 213; 16 Maine R. 158.

The entry into and occupation of the land by Grant under his deed from Buck is, as has been already remarked, equivalent to recording the deed. As the deed of mortgage was not recorded, and the plaintiff had no knowledge of it, as to him it did not exist. Buck could not set up this secret conveyance by a mortgage against creditors. It would be a fraud upon them, whatever the intention might have been. Fraud, in a legal sense, means an act unwarranted by law to the prejudice of a third person. Lofft's R. 472; 1 Cowp. 117; 1 Burr. 474; 3 Atk. 646; 1 Ves. 64; 8 Johns. R. 137; 10 Johns. R. 374.

*Clifford* and *Allen,* for the defendants, contended: —

There is not in the case the slightest pretence of fraud on the part of Buck, and he had no knowledge of the plaintiff's attachment. The only inquiry is, what are the legal rights of the parties?

The authorities cited assert the abstract principle, that the cancelling of a deed does not reconvey the premises. But in other cases, that principle is qualified and explained, and if not overruled, is entirely disregarded.

But if it did apply to the extent contended for by the plaintiff, it applies with equal force to the mortgage deed between the same parties, which was cancelled at the same time and was a part of the same transaction. This was so holden in a case similar to this. *Jackson* v. *Chase,* 2 Johns. R. 84. In accordance with that are *Tomson* v. *Ward,* 1 N. H. R. 9, and *Roberts* v. *Wiggins,* ib. 73. Let the effect of the can-

celling of the deed be what it may, it is the same upon the deed and upon the mortgage. The plaintiff then has mistaken his remedy, and by grasping at too much has lost the whole. The remedy of the plaintiff was by a sale of the equity of redemption, and not by a levy upon the land. *Bayley* v. *Bayley*, 16 Maine R. 151; 15 Pick. 84; 6 Greenl. 289; 13 Mass. R. 51; 9 Mass. R. 247.

Nor is it true, if the plaintiff is right in saying, that the land was not revested by cancelling the deed, that the mortgage became void by taking the notes of the young Grants. If the deed to Grant, sen. remains valid, then the deed to the sons conveyed nothing, the notes were without consideration, and cannot be enforced. The new notes then did not operate as a payment of the debt from Grant, sen. to Buck. Nothing but actual payment of the debt will discharge a mortgage, or prevent the mortgagee from having his remedy upon it. *Gray* v. *Jenks*, 3 Mason, 520; *Vose* v. *Handy*, 2 Greenl. 322; 8 Mass. R. 554; 9 Mass. R. 242; 7 Mass. R. 63; 11 Mass. R. 125.

The most that the plaintiff can contend for with any semblance of justice is, that the arrangement of Jan. 12, 1839, when the deed and mortgage were cancelled, did not affect his rights acquired by his attachment. This was but the equity of redemption. 10 Mass. R. 403; 13 Mass. R. 498; 6 Mass. R. 32; 1 Greenl. 73; 9 Pick. 105; 8 Cowen, 74. If he acquired any title by his levy, which is denied, he cannot hold a greater estate, than what belonged to his judgment creditor, the right in equity. 16 Mass. R. 400. And in such case the action cannot be maintained, as the fee simple is in Buck, the mortgagee, and the defendants are in possession under him. 6 Mass. R. 50; 11 Mass. R. 469; 13 Mass. R. 227; 2 Greenl. 132.

The opinion of the Court was prepared by

SHEPLEY J. — It appears from the agreed statement of facts, that on the 13th of October, 1836, Reuben Buck conveyed to Joseph Grant a farm including the premises, and at the same

time took back a mortgage to secure the payment of most of the purchase money. Neither of these conveyances were recorded. Joseph Grant and Joseph Grant, jr. entered into possession of the farm in the spring of 1837, and have remained in possession since that time. On the 15th of October, 1838, the premises were attached on a writ in favor of the plaintiff against Joseph Grant. Judgment was duly recovered, and the execution issued thereon was duly levied on the premises as the property of Joseph Grant, on the 23d of November, 1839. On the 12th of January, 1839, Buck being ignorant of this attachment, and the purchase money remaining unpaid, consented to cancel the deed from himself to Joseph Grant and the mortgage deed and notes from Joseph Grant to him; and to convey the farm to Joseph Grant, jr. and Washington Grant, and to take a mortgage from them to secure the purchase money not yet paid.

The inquiries arise; what would have been the rights of the parties, if the first deeds had not been cancelled; and what was the effect of that cancellation upon their rights. The statute, c. 36, provided, that no bargain, sale, mortgage, or other conveyance of lands, "shall be good and effectual in law to hold such lands, tenements or hereditaments against any other person or persons, but the grantor or grantors and their heirs only, unless the deed or deeds thereof be acknowledged and recorded." After Joseph Grant had entered into possession he might have conveyed the farm to a third person, who being ignorant of the mortgage deed to Buck might have procured his deed to be recorded before the mortgage to Buck, and have thereby acquired a good title against that mortgage; for the plain reason, that the statute had declared, that it should be good against Joseph Grant and his heirs, but not good against others, such as his creditors, and purchasers from him for value; because it was not recorded. When an estate is attached, and the attachment is preserved, and the execution, issued on the judgment recovered in that suit, is legally levied on it; such levy operates as a statute conveyance at the time of making the attachment. So that the plaintiff is in the

same position, as if Joseph Grant had conveyed to him for value at the time of making his attachment. And the result must have been, if Buck had retained his first mortgage, that the attachment and levy would have taken the premises before that mortgage, it being inoperative against the *bona fide* grantees of Joseph Grant and his attaching creditors, who had perfected their titles by recording them. The proper course is to levy upon the fee, and not to sell the equity, when the creditor is entitled and intends to take the estate against the rights of the mortgagee. The right in equity should be sold only, when the attaching creditor is obliged or consents to take the estate subject to the mortgage.

The effect might have been, that Buck would wholly lose his farm by neglecting to record his mortgage. But this is a result, which must have been intended, when the statute declared, that his mortgage should be good only against the grantor and his heirs, if not recorded. And Courts of law cannot relieve persons from those misfortunes, which are brought upon them by their inattention to the plain provisions of a statute.

The cancellation of the deeds might have operated to restore the estate to Buck, if the rights of other persons had not before that time intervened; but it would not have that or any other effect against the rights of such third parties.

*Judgment for the demandant.*