# WHEELING.

## HOUSTON *v.* McCLUNEY.

### July 20, 1874.

1874.
June Term.

| 8 | 135 |
|---|---|
| 36 | 126 |
| 8 | 135 |
| 38 | 198 |
| 8 | 135 |
| 40 | 620 |
| 8 | 135 |
| 43 | 592 |
| 8 | 135 |
| 50 | 521 |
| 8 | 135 |
| 55 | 493 |

1. When two joint tenants of real estate, agree with each other, that one shall, with his own money, erect improvements on the real estate jointly held, and have a lien on the interest of the other, for the money so expended, the agreement, with the actual erection of the improvements by the one and the acquiescence of the other, constitutes such a lien as will be recognized and enforced in a court of equity.

2. But such a lien is not valid, and will not be enforced in favor of the tenant who erects the improvements, against a creditor of the other, who has caused his interest in the property to be attached or a purchaser under such attachment;—whether the creditor attaching, or the purchaser under the attachment, have notice of the previous equitable lien or not.

3. In a suit by a person seeking to enforce a verbal lien on real estate, against a creditor relying on a subsequent attachment, or a purchaser under the attachment, to avoid the lien, the latter must, by evidence competent against the former, prove that the party attaching was a creditor, and that he sued out a sufficient attachment, and it was levied,—in order to sustain the attachment lien.

4. When, by the record of a case it appears that on publication, the defendant not appearing, an office judgment stood confirmed, and the plaintiff recovered a debt against the defendant, this is not evidence of the debt against a third person claiming a lien, that, but for such debt, would be valid.

5. A recital that the attachment issued in the cause was returned served on personal property and real estate, is not evidence of the issue and levy of such attachment that will constitute a lien on the real estate mentioned, competent and sufficient to prove the facts against such third person.

6. An order that a sheriff sell personal property, and in case that prove insufficient to satisfy a judgment, then to sell real estate, but with a

condition that the plaintiff is not to have the benefit of the order until he shall give bond, without evidence that the personal property was sold or was insufficient to satisfy the judgment, or that the bond was given; does not prove authority to the sheriff to sell the real estate, or at all sustain such a sale.

7. Every person embodies, represents and controls whatever title and right is vested in him. Generally his statements and acts, and judicial proceedings, and other transactions to which he is a party, are evidence against himself or any person claiming to acquire a title or right from him, after such statement or transaction; but they are not evidence against a person having acquired such title or right before.

8. A proceeding by attachment has the effect of a suit in equity to enforce a trust or lien, and binds only the parties to the proceeding, rather than the effect of a proceeding *in rem*, without specified parties, to which, however, all persons are deemed parties.

9. When the name of a plaintiff in a suit in equity is not stated in the bill, as required by the chancery practice before the Code of this State took effect, or as authorized by the Code, and the defendant demurs and answers, and the court, without other action on the demurrer, decrees in favor of the plaintiff, this Court reverses the decree. But when the plaintiff, by the allegations and proof, shows that he is entitled to relief, this Court remands the cause to the circuit court with leave to the plaintiff to amend his bill. If he fails to amend, the circuit court will dismiss the bill.

The case is stated in the opinion of the Court.

The Hon. Thayer Melvin, judge of the circuit court of Ohio county, presided at the hearing below.

*Caleb Boggess* and *George B. Caldwell*, for the appellant, Mary J. McCluney.

*Asbury J. Clarke*, for the appellee, Houston.

HOFFMAN, JUDGE:

Matthew H. Houston, on the 24th day of October, 1868, sued out of the clerk's office of the circuit court of the county of Ohio, a summons in chancery against Mary J. McCluney and Joseph H. Pendleton, and a separate summons against the latter, which were served on each of the defendants.

At October rules, 1868, the complainant filed his bill, in which he alleges:

That in the year 1852, he and Pendleton jointly purchased a part of a lot, numbered 16 in square numbered 2 in the city of Wheeling: That they afterwards determined to improve the property with a view of rendering it productive: That Pendleton being unable to furnish his half of the funds necessary for the contemplated improvement, it was agreed between them that whatever excess above his own share should be furnished by the complainant, should be a lien on the interest of Pendleton in the property: That in accordance with this agreement, a large brick building was erected on the property: That on the 1st day of July, 1859, upon adjusting the accounts in relation to the improvement, it was found and agreed thas the complainant had paid $1060. more than his half of the costs:

That about the 9th day of October, 1861, James S. Porter sued out an attachment at law, in the county court of the county of Ohio, against the property of Pendleton, which was levied by the sheriff on the 9th day of October, 1861, on his interest in the property already mentioned; and the county court by an order made at its February term, 1862, ordered a sale of the interest of Pendleton in the lot; and, on the 6th day of October, 1862, the sheriff of the county sold that interest to James McCluney, and afterwards, by virtue of an order of the circuit court of Ohio county, to which the cause had been removed, conveyed the interest to Mary J. McCluney, who still claims to hold it:

That the property is susceptible of partition between the parties respectively interested, and the complainant is entitled to have his share thereof set apart in severalty, and at the same time to have the share set apart to Miss McCluney declared subject to the lien in his favor; and unless the sum of money and interest due him on account of the improvements be paid by some short day, to be appointed by the court for the purpose, to have that share sold for the satisfaction of the sum.

1874.
June Term.

Houston
v.
McCluney.

And the complainant prays for relief.

He exhibits the deed to Houston and Pendleton for the property.

And the complainant exhibits a copy from the records of the county court of the county of Ohio, of an order made on the 5th day of February, 1862, in a case of James S. Porter against Joseph H. Pendleton, James M. Todd, Randolph C. Watkins and William H. Russell, in debt: By this record it is recited that, it appearing that publication was made in the mode prescribed by law against the defendant Pendleton, he was solemnly called but came not; that thereupon it was considered by the court that the judgment had in the office against him stand confirmed and that the plaintiff recover against him $2005.26, with interest on the said parts thereof mentioned, as specified, and costs: And that the attachment against Pendleton having been returned levied on other personal and real property specified, and on real estate in lot No. 16, square 2 in the city of Wheeling; it was ordered that the sheriff of the county of Ohio make sale of the personal property specified; and in case the moneys arising therefrom should not be sufficient to satisfy the judgment in full, the sheriff should sell the interest of Pendleton in lot No. 16, square 2, and the other property; the real estate to be sold on a credit of six and twelve months, with interest from the day of sale; and the sheriff was required to return to the clerk's office, within thirty days after the sale should be completed, an account of the sale, specifiying the articles sold, the persons to whom, and the prices at which they were sold: But that the plaintiff should not have the benefit of the order of sale until he or some one for him should have given bond with good security, to be approved by the clerk of the court in the penalty of $4,550, conditioned to abide any further order the court should make.

And the complainant exhibited a deed dated the 13th day of January, 1864; from Alonzo Loring to Mary

J. McCluney, in which it is recited that on the 5th day of February, 1862, it was ordered by the county court of the county of Ohio, in the case then depending wherein James S. Porter was plaintiff and Joseph H. Pendleton and others were defendants, that Loring, sheriff of the county, should, as directed, sell, among other lots, Pendleton's interest in lot No. 16, square 2, being an undivided moiety or half thereof, the metes and bounds of which are set forth; and that he did, on the 6th day of October, 1862, sell the same, when it was struck off to James M. McCluney, at the sum of $945; and that the circuit court of the county of Ohio, on the 2nd day of November, 1863, directed Loring, upon payment of the purchase money and interest thereon, to convey Pendleton's interest in the lot to the purchaser; and that the court, on the 13th day of January, 1864, directed him to make and deliver a good and sufficient conveyance of the interest to Mary J. McCluney, instead of James McCluney; and that the purchase money was paid: By which deed Loring grants, bargains and sells the interest to Mary J. McCluney.

At the January rules, 1871, the complainant filed his amended bill, in which he re-asserts most of the matters of the original bill, and alleges that he was not a party to the attachment and in no wise consented to it.

In term, on the 3d day of April, 1871, the defendant, Miss McCluney, filed her demurrer, to the complainant's bill and Houston joined therein.

And Miss McCluney filed her answer, in which she says:

That in regard to the purchase and improvement of the property described in the bill, and the contracts agreements and understandings between the complainant and Pendleton, she knows nothing; but that, as set forth in the bill, she became the purchaser of the interest of Pendleton in the property mentioned in the deed from Loring to her, filed as an exhibit, as set forth in that deed; and she prays that it may be taken as a part of

her answer. And she denies that the complainant has any lien of any kind upon the property for any amount whatever : And says that the claim set forth in the bill is one against Pendleton personally.

Houston replied generally to the answer.

And Pendleton filed his answer in which he admits the original relation set up in the bill, between himself and complainant : But he denies that any valid sale of his interest was ever made as set up in the bill, and claims that his co-defendant has no title whatever ; and reserves all rights he may have as to the parties proceeding under the action whereby his interest was sold, and the purchaser thereunder ; but, for the purposes of this proceeding, assents to a partition, reserving the right to be substituted to the place of Miss McCluney.

The deposition of Pendleton was taken, in which he testifies, that about the 1st of July, 1859, Houston and himself determined to improve the western portion of lot No. 16, the property in the bill mentioned, which they had purchased : That he did not have funds sufficient to pay for one-half the proposed improvements, and therefore it was agreed by them that if Houston would advance the surplus funds necessary to make such improvements, he should have an interest in the undivided property to the extent of any advance he might make above Pendleton's : That under this agreement they erected a building consisting of two rooms : That Houston paid on account of the building $1,060 above his half of the cost thereof, for which according to their agreement, Houston was to have an interest on Pendleton's portion, by lien or otherwise.

The pleadings and proofs refer to other matters immaterial to the questions now considered.

On the 21st day of July 1871, the cause was heard, and the court being of opinion that Houston was entitled to an undivided half of the property, and to the sum of $1,060, with interest from the 1st day of July 1859, decreed that partition should be made, and ap-

pointed commissioners for that purpose; and declared that on the portion assigned to Miss McCluney, a lien was reserved in favor of the complainant for the sum with interest, as just mentioned.

The commissioners reported that they had divided the property and assigned to Miss McCluney the eastern part, fronting twenty feet and three inches, and to Houston the western part fronting twenty-one feet and eight inches on Quincy Street: That the former part was of the value of $3,037.50, and the latter part of the value of $3,250; and that Houston should pay to Miss McCluney, for owelty of partition, $106.25. To this report there was no exception.

On the 27th day of March, 1872, the court finally decreed that the report be confirmed, and the partition be held firm, and that unless Miss McCluney should within ninety days pay to Houston $1,060, with interest, subject to a credit of $106.25, the eastern part of the lot, assigned to Miss McCluney, should be sold; the court by the decree, prescribing terms, requiring bonds and regulating costs.

On the 26th day of April, 1872, Miss McCluney appealed from the decree.

The pleadings and proofs, it seems, were intended to raise the question whether, when two joint tenants agree with each other that one shall with his own money erect improvements (other than necessary repairs,) on the real estate jointly held, and have a lien on the interest of the other for the money so expended, the agreement, with the actual erection of the improvements by the one and the acquiesence by the other, constitutes such a lien as will be recognized and enforced in a court of equity; and if so, then, whether the lien is valid, and will be enforced in favor of the tenant who erects the improvements, against a creditor of the other who has caused his interest in the property to be attached, or a purchaser under such attachment.

Mr. Justice Story, in his Equity Jurisprudence, (secs. 1234, 1236 and 1237,) says:

"Another species of lien is that which results to one joint owner of any real estate, or other joint property, from repairs and improvements made upon such property for the joint benefit, and for disbursements touching the same. This lien, as we shall presently see, sometimes arises from a contract, express or implied, between the parties, and sometimes it is created by courts of equity, upon mere principles of general justice, especially where any relief is sought by the party, who ought to pay his part of the money expended in such repairs and improvements; for in such cases, the maxim well applies *Nemo debet locupletari ex alterius incommodo.*"

"But the doctrine of contribution in equity is larger than it is in law; and in many cases, repairs and improvements will be held to be, not merely a personal charge, but a lien on the estate itself. Thus, for example, it has been held, that, if two or more persons make a joint purchase, and afterwards one of them lays out a considerable sum of money in repairs or improvements, and dies, this will be a lien on the land, and a trust for the representatives of him who advanced it.

"In many cases of this sort, the doctrine may proceed upon the ground of some express or implied agreement as to the repairs and improvements, between the joint purchasers, and an implied lien following upon such an agreement. But courts of equity have not confined the doctrine of compensation, or lien, for repairs and improvements, to cases of agreement or joint purchases. They have extended it to other cases, where the party making repairs and improvements has acted *bona fide* and innocently, and there has been a substantial benefit conferred on the owner, so that *ex æquo et bono*, he ought to pay for such benefit. Thus, when a tenant for life, under a will, has gone on to finish the improvements, permanently beneficial to an estate, which were begun by the testator, courts of equity have deemed the expenditure a charge,

for which the tenant is entitled to a lien. So where a party, lawfully in possession under a defective title, has made permanent improvements, if relief is asked in equity by the true owner, he will be compelled to allow for such improvements. So money, *bona fide* laid out in improvements on an estate by one joint owner, will be allowed on a bill by the other, if he ask for a partition. So if the true owner stand by, and suffers improvements to be made on an estate, without notice of his title, he will not be permitted in equity to enrich himself by the loss of another, but the improvements will constitute a lien on the estate. For it has been well said : *Jure naturæ æquum est, neminem cum alterius detrimento et injuria fieri locupletiorem.* A *fortiori* this doctrine will apply to cases where the parties stand in a fiduciary relation to each other ; as, where an agent stands by, and without notice of his title, suffers his principal to spend money in improvements upon the agent's estate."

Mr. Spence, in his Treatise on Equitable Jurisdiction, (vol. 2 p. 206,) says :

"If two or more make a joint purchase and afterward one of them lays out a considerable sum of money in repairs and improvements, he has a lien on the land, and a trust is raised for him and his representatives for the amount."

These distinguished jurists cite a number of cases as authority for this doctrine. Though I have not seen all these, I have examined most of them and a number of others : And, while I find cases where there were expenditures for repairs or necessary improvements, and cases where the party benefitted by improvements sought some sort of relief against the other who had made them, and cases in which, without any agreement, liens for expenditures were sustained, I have found no case in which there was an agreement that one should expend money on the joint estate for the benefit of both, and that such expenditure should constitute a lien.

In *Green v. Putnam*, decided by the Supreme Court of New York, (1 Barb. 500): Hannah Green one of the plaintiffs, was a co-parcener with her brother Freeman Thomas in a tract of land. He conveyed his interest to Mindwell Bridges, who mortgaged it to George Peck, who foreclosed the mortgage, and afterwards died, leaving heirs, who were defendants. Freeman and Bridges expended money for valuable improvements on the land.

Mr. Justice Paige, delivering the opinion of the court, said :

"The only remaining question is, whether the defendants are entitled, upon the partition or sale of the premises, to an allowance for the moneys expended by Freeman Thomas and Mindwell Bridges, in the erection of the new dwelling house on the premises. The defendants claim that, as George Peck the elder derived his title to the premises from Freeman Thomas and Mindwell Bridges, they, as his heirs at law, are entitled to an allowance for all the moneys expended by Freeman Thomas and Mrs. Bridges, in necessary, permanent, and beneficial improvements upon the premises.

"Where one tenant in common lays out money in improvements on the estate, although the money so expended does not in strictness constitute a lien on the estate, yet a court of equity will not grant a partition, without first directing an account, and a suitable compensation ; or else in partition it will assign to such tenant in common, that part of the premises on which the improvements have been made. 1 Story's Eq. Juris. secs. 655, 656, b. ; *Swan v. Swan*, 8 Price 518 ; *Town v. Needham*, 3 Paige, Ch. (N. Y.,) 546, 553 ; *Id.* 470. To entitle the tenant in common to an allowance on a partition in equity, for the improvements made on the premises, it does not appear to be necessary for him to show the assent of his co-tenants to such improvements, or a promise, on their part, to contribute their share of expense ; nor is it necessary for them to show a previous request to join in the improvements, and a refusal. Such a request

and refusal are undoubtedly necessary to sustain an

action of assumpsit at law, by one tenant in common against another, for repairs, or the common law writ, *de reparatione facienda*. (*Mumford v. Brown*, 6 Cowen N. Y. 476 ; 4 Kent's Com. 370, 2nd. ed.)"

In many other cases, this principle is approved and acted upon.

When one of two co-tenants has paid his money and improved the common property for the benefit of both, and the other wishes a partition, it is held to be just that the money paid should bind the property to its payment. If this be so—and it is not controverted—then it would seem that, no matter which party, or whether either party, should desire a partition, it would be alike just that the property should be liable for the money paid for its improvement and enhancement in value. Especially, when the other co-tenant has requested the party who made the improvement, to make it, and agreed with him that the money should constitute such a lien, is it unreasonable that the renumeration should depend on the accident that the co-tenant who made the agreement should want and apply for a partition. The doctrine that the administration of relief to a meritorious party shall depend on another's bringing the subject to the cognizance of a court of equity, which has prevailed to a considerable extent, is giving way to a more equal and satisfactory dispensation of redress.

In the case of *Tyler v. Baldwin*, (10 Barb. 582, 626,) the Supreme Court of New York thought the evidence proved that one co-tenant requested another to make large and valuable improvements on the common property, but did not agree that he should have a lien for the money expended in the enterprise. The latter made the improvements. The court emphatically distinguished between the two classes of cases, and held that the request, though followed by the actual expenditure, without an agreement for a lien, did not constitute the lien. And,

while the court did not decide, it did not controvert, that if the co-tenant had actually stipulated that the party expending the money should have a lien on the interest of the other party, the transaction would effectually have created the lien.

While, in England, as well as in most States of the Union, the statute of frauds expressly declares that trusts of lands shall be manifested or proved by writing signed by the parties creating them, or their agents, or by will, or else be void; provided that when a conveyance is made by which a trust or confidence shall arise by implication or construction of law, it shall be of the like effect as if the statute had not been made; and the statute prohibits an action on a contract for the sale of lands, or any interest in or concerning them, unless the agreement or a note of it be in writing, signed by the party to be charged, or his agent: And the New York statute declares that no trust concerning land shall be created or declared, unless by act or operation of law or by deed in writing, subscribed by the party creating it or his agent: As in the investigation of the case of *Nease v. Capehart, Exor.* 8 W. Va., 95, just decided, we have already seen, the provision of the English statute mentioned, was intentionally omitted from the Virginia statute, which, in language, merely prohibits an action on a contract for the sale of real estate, unless the contract or a note of it be in writing signed by the party to be charged or his agent: So that, whatever impediment the statute of England or that of New York, or that of any other State might oppose to the validity of such an equitable lien as is now in question, would be very different from, and much more formidable than any that the Virginia statute might offer.

The relation between one joint tenant and another is of the closest character that ownership of property occasions. When one of them agrees with the other, that the latter shall expend his money and improve the property and have a lien on it for the money, and the

latter does so, it is to be presumed that the former, by agreement, induces him to make the expenditure. He, accordingly, puts his money in the joint property, and so enhances its value for the benefit of both. The Courts of Equity in England, and in New York and other States, as in Virginia, notwithstanding the statutes mentioned, have gone far to grant relief in cases of part performance of verbal contracts for the sale of lands, and in cases where one person has induced or without objection known and allowed another to expend money or do what might seriously injure him if the court should not protect him. I think the principles that usually inspire the action of the court apply more clearly to this than to many other cases in which their application is not doubted.

But though one co-tenant may have such a lien against the other co-tenant himself, it does not follow that it will be valid against a creditor of the latter having an attachment levied on the property, so as to constitute a legal lien.

In its nature a parol contract or trust, if not always inferior in credit and force to one created or evidenced by writing, is certainly not superior to it. While at common law and under statutes, actions on parol contracts, relating to a number of subjects, have been prohibited, and parol trusts have been declared void, no principle or statute has ever imparted to such a contract or trust greater validity than if it had been in writing and signed by the party to be charged, it would have possessed. Any such law would at once strike a mind of ordinary intelligence as preposterous.

The act passed in 1785 relating to conveyances, and other acts passed before and re-enacted at the revisal in 1819, (1 R. C. ch. 99, secs. 1, 2, 4 and 12) provided that no lands should be conveyed unless the conveyance be declared, in writing, nor should it be good against the purchaser not having notice thereof, or any creditor, unless it be authenticated and lodged, as required, for recordation :

And that no covenant or agreement made in consideration of marriage should be good; and that all bargains and sales, deeds of trust and mortgages should be void unless they should be so authenticated and lodged for recordation: And an amendment introduced at the revisal (sec. 13) provided that any title bond or other written contract in relation to land, might be authenticated and recorded; and that the proceeding should be taken and held as notice to subsequent purchasers: But this did not, in case the contract should not be recorded, impair its validity between parties or against others than purchasers for a valuable consideration without notice.

The provisions on this subject, as far as material to the present purpose, condensed and methodized in the Code of Virginia enacted in 1849, (ch. 118) are as follows—subject to some qualifications that need not now be noticed:

"4. Any contract in writing, made, in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate or a term therein of more than five years, shall, from the' time it is duly admitted to record, be, as against creditors and purchasers, as valid as if the contract was a deed conveying the estate or interest embraced in the contract.

"5. Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for a valuable consideration without notice, until and except from the time that it was duly admitted to record in the county or corporation wherein the property embraced in such contract or deed, may be.

"11. The words 'creditors' and 'purchasers,' where used in any previous section of this chapter, or in chapter one hundred and nineteen, shall not be restricted to the protection of creditors of and purchasers from the grantor, but shall extend to and embrace all credi-

tors and purchasers who, but for the deed or writing, would have had title to the property conveyed, or a right to subject it to their debts."

As the General Assembly having before it the English statute of frauds, omitted the section that related to trusts, and the clause that specified an interest in or concerning lands, the omission implied the intent that the principle embodied in these provisions should not constitute a part of the Virginia law, and so limited the construction of the provision, adopted : Nothing of this sort gainsays the legislative judgment that the principle of the recording acts was just and necessary for the protection of creditors and purchasers for valuable consideration without notice, or prevents its application by the court of equity to parol as well as to written trusts, charges and liens. And the Supreme Court of Appeals of Virginia has so applied this principle.

In England where the registry law is not general and its spirit did not pervade the doctrine of the court of equity, to the same extent that the protective and salutary system adopted in Virginia is intended to do, it was held that when a creditor had mortgaged land to secure a debt, he might afterwards verbally agree with the mortgagee that the mortgage already executed should stand as a security for another sum subsequently borrowed, and that such an agreement would annex the right originating in the verbal contract to the legal title vested in the mortgagee, so that in the distribution of the proceeds of the land, the debt for the latter would be preferred to a creditor having acquired a mortgage or other lien on the same land intermediate between the first mortgage and the subsequent verbal agreement. And a borrower of money or other debtor might by deed on its face absolute, convey land to the lender or other creditor subject to a parol agreement that the latter should hold the land as security for the money only, and this agreement was deemed effectual against a creditor of the latter having a general lien. And the borrower might

deposit title deeds with the lender, and thereby, without writing, create an equitable mortgage, charge or lien, that was deemed effectual against such a creditor.

But in the case of *Siter, Price & Co., McClanachan and als* (2 Gratt., 280—see. 301, 303, 305, 309, 314), Judge Baldwin, delivering the opinion of the majority of the court, said:

"In England, a general registration law has never existed, a defect in her jurisprudence which has occasioned much inconvenience and litigation, and many difficulties in the adjudications of conflicting equities.

The "construction of the registration laws of various States, is believed to be founded as much upon the general scope and policy of such laws, as the particular provisions of the statutes.

"The provisions of the 'Virginia' act seem intended to enable the person dealing with the estate to say, 'all instruments that can have effect against me are brought on the registry, and none which are not there can be brought against me.' This necessarily excludes tacking; for that is giving effect to an instrument which a person is not enabled by means of the registry to discover; and the manner in which the act is framed shows that such was the idea of the Legislature.

"Our law, unquestionably, in its present state, avoids deeds and conveyances if unregistered, to the prejudice of subsequent purchasers and incumbrancers in good faith; and when duly registered, makes them effectual as notice to all the world. But the notice is of the contents of the instrument, and of nothing more; not of any secret condition, or trust, or equity, between the parties. *Frost v. Beekman*, 1 Johns. Ch. (N. Y.) 288; 18 Johns. (N. Y.) 544 S.C. *Parkist v. Alexander*, 1 Johns. Ch. (N, Y.) 510; *St. Andrews Church v. Tompkins*, 7 Johns. Ch. (N. Y.) 14; *Davison v. Waite*, 2 Munf. 527; *Colquhoun v. Atkinsons*, 6 Munf. 550; *Bell v. Hammond*, 2 Leigh 416. If this were otherwise, then the registry, instead of being a protection, would be a snare to others dealing

with the subject. As against *bona fide* subsequent purchasers and incumbrancers, a registered deed or conveyance must be taken to express truly the agreement between the parties; and all extrinsic stipulations, dealings and arrangements can stand upon no better footing than an unregistered contract; and if by parol, of a contract incapable of registration. They cannot operate to the prejudice of the subsequent purchaser or incumbrancer; but may prove beneficial to him, by destroying the effect of the deed or conveyance as a registered instrument. Thus if a deed absolute on its face, and unaccompanied by any defeasance, be intended and agreed between the parties to operate as a mortgage, it can have no effect, in either character, against a subsequent purchaser or incumbrancer, who has not actual notice of the trust nature of the transaction. *Dey v. Dunham,* 2 Johns. Ch. (N. Y.) 182; 15 Johns. 555.

"An equitable mortgage, by a deposit of title deed, is a much stronger case; but since our registration laws, there can be no such security against a subsequent *bona fide* purchaser or incumbrancer, and we are happily rid of so pernicious a doctrine. 4 Kent's Com. 151; 2 Story's Eq. Juris. 289; Sugden on Vendors, 694-5; *Colquhoun v. Atkinsons,* 6 Munf. 550."

Thus while the court does not question the validity of either of these classes of mortgages, trust or charges, between the parties, upon the general principle pervading the law as to recordation, it declares them void as to subsequent creditors having liens.

Upon principle and authority, then, it seems clear that a parol contract, relative to real estate, or a parol trust or lien in or upon such estate, of which a contract is an essential element, when valid between the immediate parties to it, can not be deemed to have any greater validity against a creditor or purchaser for valuable consideration without notice, than if the contract or agreement was in writing signed by the party to be bound, but not admitted to record. If such contract or trust

1871:
June Term.

Houston
v.
McCluney.

were held more efficacious against these classes of persons, it would only be necessary to substitute the verbal contract or declaration for the written deed, contract or declaration of trust, in order to evade effectually the operation of the recordation statutes and enforce such contracts and trusts, though made in secret, against the most innocent, vigilant and meritorious of creditors who should acquire general liens without notice or apprehension of the existence of any such contract or trust. It would be supererogatory to enlarge on the mischief which the enforcement of such a doctrine would occasion.

A party contracting or declaring a trust may always reduce the contract or declaration, or have it reduced, to writing; and the party for whose benefit it is made, when not a recipient without consideration, may require this to be done. Hence the impossibility of recording a verbal contract, agreement or declaration of trust, is not an excuse for the failure to have it in writing, signed by the party to be charged, and acknowledged and recorded.

Under the statutory provisions quoted, if one co-tenant agrees with another that the latter shall with his own money improve the joint or common estate, and in solemn form executes a mortgage on his, the former's, interest in the estate for a proportionate part of the money so expended, and the agreement is performed by the latter and acquiesced in by the former, such a mortgage, if not recorded would be void as to a creditor having acquired a lien. A verbal agreement by the one that the other should expend his money and have a lien for it, performed and acquiesced in, and so constituting a lien between the parties, cannot by a court of equity he held valid, and enforced against a creditor having a lien, or a purchaser thereunder. The efficacy of such a lien against a creditor, should be held the same—or at any rate, it should not be held greater than the like agreement, in writing, signed, or a deed of trust or mortgage, not recorded.

Upon this principle, the equitable lien of the joint tenant for money expended in improvements, is void against the creditor. The provision of the statute on this subject is construed to refer to a creditor having a lien; but it is immaterial whether the creditor have notice of a. previous deed or contract, or not.

By express declaration of the statute, it relates to any creditor, who but for the previous deed or lien, would. have a right to subject the estate to his debt. Now, but. for · the equitable lien, a creditor who subsequently attaches the property would unquestionably have a right to, subject it to his debt. But the previous lien is as utterly nothing whenever we consider the right of a creditor, as if it had never existed. Hence the objection that the. pre-existing equitable lien qualifies the estate, and the. subsequent attachment can reach only what the debtor· had as he had it, is altogether inappropriate.

Judge Lomax, in his Digest, (vol. 2, p. 367-8,) says :. "As to who are creditors and purchasers against whom the conveyances unrecorded are vacated, it would seem reasonable to understand by the word 'creditors,' the same description of persons as those who are creditors, within the meaning of the statute of fraudulent conveyances, such as having acquired a lien, by virtue of a recognizance, judgment or execution, or a forfeited forth-coming bond duly returned, or an attachment on the land. conveyed, are entitled to relief against the conveyance which is interposed to defeat that lien ; and, consequently,, that the conveyance from the debtor, which was unrecorded at the time the lien was acquired will be void as, against such creditors.

"As to creditors, the unrecorded deed is void whether· they have notice of it or not. In this respect they stand on a different ground from purchasers.

"A purchaser under a judicial sale, made in behalf of a. creditor, holds the rights and occupies the place of the creditor, in a controversy with a purchaser from the

20

debtor under an unrecorded conveyance. The notice of the unrecorded deed which might affect him as a purchaser in ordinary cases, will not affect him, because he occupies the place of the creditor, who was not by the statute affected by notice. If it were otherwise the rights of a creditor would be of no avail."

The provision of the chapter of the code of Virginia of 1849, declaring the lien of an attachment on real estate (ch. 151, sec. 12,) is as follows:

"The plaintiff shall have a lien * * * on any real estate mentioned in an endorsement on the attachment or subpœna from the sueing out of the same."

No other comment or authority, I can conceive, could make the plain meaning of this legislation more manifest or conclusive on this point than the mere statement of its provisions.

In Maine, the recording act in force some years ago—whether it is in force now I do not learn—provided that no bargain, sale, mortgage or other conveyance of land, should be effectual against any other person than the grantor and his heirs, unless the deed should be acknowledged and recorded. In *Nason v. Grant*, (21 Maine 160,) a mortgage on land was executed but not recorded, and afterwards the land was attached, and, on subsequent proceedings, was sold. The court held that the right of the creditor under the attachment, and derivative right of the purchaser was paramount to the claim of the mortgagee.

I have seen the recording acts of a few of the other States, but have found none that, like the statutes of Virginia and West Virginia, declare a deed or contract not recorded, void as to creditors.

In a number of cases decided in Virginia and other States, it has been held that the attaching creditor and purchaser at the sale of the property attached, acquires no greater right than the debtor had in the property. But in none of these cases was there a conveyance, trust or lien, made or created by the debtor, that under the

recordation law was void as to the creditor who attached. In such cases the debtor who made or created the conveyance or lien may be deemed, nevertheless, to hold the property for the benefit of the creditor to the extent of the debt for which he obtains a lien.

The estate to which the lien attaches for the security of the creditor, by the proper order, deed and proceeding, passes to the purchaser, whether he has notice of a previous deed or contract or not.

But in a suit by a joint tenant a party asserting and seeking to enforce a lien for improvements, against a party relying on an attachment sued out by an alleged creditor of the other joint tenant and a sale thereunder, the latter, to establish his title must prove that the party attaching was in fact his creditor; that he sued out a sufficient attachment; that it was levied; and any other facts that may be necessary to make the attachment a valid lien. Evidence not only proper and sufficient in its character and degree, but competent against the plaintiff having the prior equitable right, is indispensable to establish the fact that will defeat that right.

The failure of a party not served with process, to appear and make defence within one month after an order of publication has been published, is not evidence of the truth and justice of the claim asserted against him. Consequently the law does not allow an office judgment to be taken and confirmed against such a party, but it requires proof, before a judgment may be rendered. When, by the record of a case, it appears that on publication, the defendant not appearing, an office judgment stood confirmed and the plaintiff recovered a debt against the defendant, this is not evidence of the debt against a third person claiming a lien, that, but for such debt, would be valid. And a recital that the attachment issued in the cause was returned served on personal property specified, and real estate, is not evidence of the issue and levy of such attachment as will constitute a lien on the real estate mentioned, competent and suffi-

cient to prove the fact, against such third person : And an order that a sheriff sell personal property, and in case that prove insufficient to satisfy a judgment, then that he sell real estate; but that the plaintiff is not to have the benefit of the order until he give bond, without evidence that the personal property sold was insufficient to satisfy the judgment, or that the bond was given does not prove authority to the sheriff to sell the real estate, or sustain such a sale.

Every person embodies, represents and controls whatever title and right is vested in him. Generally, his statements and acts, and judicial proceedings and other transactions to which he is a party, are evidence against himself or any person claiming to acquire a title or right from him after such statement or transaction; but they are not evidence against a person having acquired such title or right before. Whether, however, a judgment in favor of a party against another who has been served with process for a debt, proves either conclusively or presumptively, the relation of creditor and debtor, so as to destroy the prior equitable right of a third person, which but for that relation would be valid, is a question as to which the authorities may not be very clear and satisfactory. But this question does not arise here.

A proceeding upon attachment under the Virginia statute, as to the parties bound by it, has the effect of a suit in equity to enforce a trust or lien, rather than a proceeding in the English exchequer or admiralty against personal property, without specified parties, to which however all persons are deemed parties. The attachment and subsequent proceeding holds and disposes of the rights of the parties who have appeared, absolutely, and of those who have not appeared, but against whom publication has been made, subject to their appearance and the assertion of their rights as authorized. To this extent it concludes the parties and all persons claiming through or under them by right or apparent right acquired afterwards; but it does not impair or prejudice the right of a stranger to the proceeding.

In *Mantin v. Chandler & Co.*, in the Circuit Court of the United States for the District of Virginia and North Carolina, (2 Brock. 125,) it appeared that Chandler & Co., were indebted to Walsh, who assigned the debt to Mantin. Rowland brought suit in the nature of a foreign attachment against Walsh as an absent defendant, and Chandler & Co., who had notice of the arrangement, and the debt in their hands was attached; and a judgment was given that they pay Rowland, which was enforced. Afterwards Mantin sued Chandler & Co., for the debt and they relied on the record of the judgment and the payment of the debt by them to Rowland, as a defence.

Chief Justice Marshall said:

"In every case where parties are necessary to give the court cognizance of the cause, the judgment, or the sentence binds them only, (with some few exceptions standing on particular principles,) who are parties or privies to it."

"The process given by the act of Assembly in the particular case, is not against the thing, but the person. It is in a suit brought against a defendant not residing in the country, and having effects within it, that this proceeding is allowed; and of course the foreign defendant must be named in the subpœna and the bill. The questions to be decided in every such case are—is the foreign defendant indebted to the plaintiff, and are the attached effects his property? The plaintiff must establish both of these facts, and the defendants may controvert them. It is, then, a case, which by the very the words of the law, is a suit between parties by which the rights of the individuals before the court are to be examined and determined. The law substitutes publication for service of process on the absent defendant, which shall give the court jurisdiction over the cause, and enable it to make a decree for the payment of the debt, which is chargeable on his effects in the hands of the garnishee. No reason can be assigned why this decree should bind a person who is

not a party nor privy to it, which does not apply to every case. No reason can be given for the rule which does not apply to this case."

In the record of the case of *Porter v. Pendleton and others*, or so much of it as is before us, there is nothing except what has been stated to show that Pendleton was a defendant, that any order of publication was ever entered, or any attachment was ever issued or levied; there appears no process or order of publication; and no affidavit stating the amount or justice of any claim, or the non-residence of Pendleton, or any ground of attachment; and no sufficient evidence that any attachment issued or was levied on the property in question: And there is no evidence that the personal property was sold or was insufficient to satisfy Porter's judgment; or that any bond was given.

But a bill in which the name of the plaintiff is not stated as required by the chancery practice before the Code of this State took effect, or as authorized by the Code, on general demurrer is defective. The bill in this case is of such character.

Therefore, the decree is reversed and there is judgment in favor of the defendant and appellant, for costs, and leave is given to the plaintiff to amend his bill, and the cause is remanded. If the plaintiff amends his bill, the cause will proceed; but if not, the bill will be dismissed.

HAYMOND, PRESIDENT, and MOORE JUDGE, concur in the foregoing, as well as the points decided.

Absent, PAULL, JUDGE.

DECREE REVERSED AND SUIT REMANDED WITH LEAVE TO AMEND—IF BILL AMENDED CAUSE TO PROCEED, OTHERWISE TO BE DISMISSED.