## WILLIAM B. TYLER *vs.* JUDGES OF THE COURT OF REGISTRATION.

Suffolk.    October 4, 1899. — January 3, 1900.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

*Land Registration Act — Constitutional Law.*

The St. of 1898, c. 562, entitled "An Act to provide for registering and confirming titles to land," is not unconstitutional, in that the original registration deprives all persons except the registered owner of any interest in the land without due process of law, in that it gives judicial powers to the recorder and assistant recorders after the original registration, although not judicial officers under the Constitution, or in that there is no provision for notice before registration of transfers or dealings subsequent to the original registration. LATHROP & LORING, JJ., dissenting.

PETITION, for a writ of prohibition against the judges of the Court of Registration established by St. 1898, c. 562, entitled "An Act to provide for registering and confirming titles to land," to prohibit them from proceeding further in registering the title to a certain parcel of land and determining the boundaries between it and an adjoining parcel of land belonging to the petitioner.

At the hearing before *Hammond*, J., the only question raised was whether the statute was constitutional, the petitioner contending that the original registration deprives all persons except the registered owner of any interest in the land without due process of law (14th Amendment Const. U. S., Declaration of Rights, Art. 12), that the statute gives judicial powers to the recorder and assistant recorders after the original registration, although not judicial officers under the Constitution (Const. Mass. c. 2, § 1, art. 9; c. 3, art. 1. Declaration of Rights, art. 30), and that, there being no provision for notice before registration of transfers or dealings subsequently to the original regis-

tration, the effect is to deprive persons of their property without due process of law. The judge reserved the question for the determination of the full court.

*J. L. Thorndike,* for the petitioner.

*H. M. Knowlton,* Attorney General, *& F. T. Hammond,* Assistant Attorney General, for the respondents.

HOLMES, C. J. This is a petition for a writ of prohibition against the judges of the Court of Registration established by St. 1898, c. 562, and is brought to prevent their proceeding upon an application concerning land in which the petitioner claims an interest. The ground of the petition is that the act establishing the court is unconstitutional. Two reasons are urged against the act, both of which are thought to go to the root of the statute and to make action under it impossible. The first and most important is that the original registration deprives all persons except the registered owner of any interest in the land without due process of law. There is no dispute that the object of the system, expressed in § 38, is that the decree of registration " shall bind the land and quiet the title thereto," and " shall be conclusive upon and against all persons," whether named in the proceedings or not, subject to few and immaterial exceptions. And this being admitted, it is objected that there is no sufficient process against, or notice to, persons having adverse claims, in a proceeding intended to bar their possible rights.

The application for registration is to be in writing and signed and sworn to. It is to contain an accurate description of the land, to set forth clearly other outstanding estates or interests known to the petitioner, to identify the deed by which he obtained title, to state the name and address of the occupant if there is one, and also to give the names and addresses so far as known of the occupants of all lands adjoining. § 21. As soon as it is filed, a memorandum containing a copy of the description of the land concerned is to be filed in the registry of deeds. § 20. The case is immediately referred to an examiner (appointed by the judge, § 12), who makes as full an investigation as he can and reports to the court. § 29. If in the opinion of the examiner the applicant has a good title as alleged, or if the applicant after an adverse opinion elects to proceed further, the recorder is to publish a notice by order of the court in some newspaper

published in the district where any portion of the land lies. This notice is to be addressed by name to all persons known to have an adverse interest, and to the adjoining owners and occupants so far as known, and to all whom it may concern. It is to contain a description of the land, the name of the applicant, and the time and place of the hearing. § 31. A copy is to be mailed to every person named in the notice whose address is known, and a duly attested copy is to be posted in a conspicuous place on each parcel of land included in the application, by a sheriff or deputy sheriff, fourteen days at least before the return day. Further notice may be ordered by the court. § 32.

It will be seen that the notice is required to name all persons known to have an adverse interest, and this of course includes any adverse claim, whether admitted or denied, that may have been discovered by the examiner, or in any way found to exist. Taking this into account, we should construe the requirement in § 21 concerning the application, as calling upon the applicant to mention not merely outstanding interests which he admits, but equally all claims of interest set up although denied by him. We mention this here to dispose of an objection of detail urged by the petitioner, and we pass to the general objection that, however construed, the mode of notice does not satisfy the Constitution, either as to persons residing within the State upon whom it is not served, or as to persons residing out of the State and not named.

If it does not satisfy the Constitution, a judicial proceeding to clear titles against all the world hardly is possible, for the very meaning of such a proceeding is to get rid of unknown as well as known claims, — indeed certainty against the unknown may be said to be its chief end, — and unknown claims cannot be dealt with by personal service upon the claimant. It seems to have been the impression of the Supreme Court of Ohio, in the case most relied upon by the petitioner, that such a judicial proceeding is impossible in this country. *State* v. *Guilbert*, 56 Ohio St. 575, 629. But we cannot bring ourselves to doubt that the Constitutions of the United States and of Massachusetts at least permit it as fully as did the common law. Prescription or a statute of limitations may give a title good against the world and destroy all manner of outstanding claims

without any notice or judicial proceeding at all. Time and the chance which it gives the owner to find out that he is in danger of losing rights are due process of law in that case. *Wheeler* v. *Jackson*, 137 U. S. 245, 258. The same result used to follow upon proceedings which, looked at apart from history, may be regarded as standing half way between statutes of limitations and true judgments *in rem*, and which took much less trouble about giving notice than the statute before us. We refer to the effect of a judgment on a writ of right after the *mise* joined and the lapse of a year and a day; Booth, Real Actions, 101, *in margine ;* Fitz. Abr. Continual Claim, pl. 7, *Faux Recovere*, pl. 1; Y. B. 5 Ed. III. 51, pl. 60; and of a fine with proclamations after the same time or by a later statute after five years. 2 Bl. Com. 354. 2 Inst. 510, 518. St. 18 Ed. I., *modus levandi fines.* 34 Ed. III. c. 16. 4 & 5 Hen. VII. c. 24. 32 Hen. VIII. c. 36. It would have astonished John Adams to be told that the framers of our Constitution had put an end to the possibility of these ancient institutions. A somewhat similar statutory contrivance of modern days has been held good. *Turner* v. *New York*, 168 U. S. 90. Finally, as was pointed out by the counsel for the petitioner, a proceeding *in rem* in the proper sense of the word might give a clear title without other notice than a seizure of the *res* and an exhibition of the warrant to those in charge. 2 Browne, Civ. & Adm. Law, 398. The general requirement of advertisement in admiralty cases is said to be due to rules of court. U. S. Adm. Rule 9. Betts, Adm. Practice (1838), 33, 34, App. 14.

The prohibition in the Fourteenth Amendment of the Constitution of the United States against a State depriving any person of his property without due process of law, and that in the twelfth article of the Massachusetts Bill of Rights, refer to somewhat vaguely determined criteria of justification, which may be found in ancient practice; *Murray* v. *Hoboken Land & Improvement Co.* 18 How. 272, 277; or which may be found in convenience and substantial justice, although the form is new. *Hurtado* v. *People*, 110 U. S. 516, 528, 531. *Holden* v. *Hardy*, 169 U. S. 366, 388, 389. The prohibitions must be taken largely, with a regard to substance rather than to form, or they are likely to do more harm than good. It is not enough to show

a procedure to be unconstitutional to say that we never have heard of it before. *Hurtado* v. *People*, 110 U. S. 516, 537.

Looked at either from the point of view of history or of the necessary requirements of justice, a proceeding *in rem* dealing with a tangible *res* may be instituted and carried to judgment without personal service upon claimants within the State or notice by name to those outside of it, and not encounter any provision of either Constitution. Jurisdiction is secured by the power of the court over the *res*. As we have said, such a proceeding would be impossible, were this not so, for it hardly would do to make a distinction between the constitutional rights of claimants who were known and those who were not known to the plaintiff, when the proceeding is to bar all. *Pennoyer* v. *Neff*, 95 U. S. 714, 727. *The Mary*, 9 Cranch, 126, 144. *Mankin* v. *Chandler*, 2 Brock. 125, 127. *Brown* v. *Levee Commissioners*, 50 Miss. 468, 481. Freem. Judgments, (4th ed.) §§ 606, 611. In *Hamilton* v. *Brown*, 161 U. S. 256, a judgment of escheat was held conclusive upon persons notified only by advertisement to all persons interested. It is true that the statute under consideration required the petition to name all known claimants, and personal service to be made on those so named. But that did the plaintiffs no good, as they were not named. So a decree allowing or disallowing a will binds everybody, although the only notice of the proceedings given be a general notice to all persons interested. And in this case, as in that of escheat just cited, the conclusive effect of the decree is not put upon the ground that the State has an absolute power to determine the persons to whom a man's property shall go at his death, but upon the characteristics of a proceeding *in rem*. *Bonnemort* v. *Gill*, 167 Mass. 338, 340. See 161 U. S. 263, 274. Admiralty proceedings need only to be mentioned in this connection, and further citation of cases seems unnecessary.

Speaking for myself, I see no reason why what we have said as to proceedings *in rem* in general should not apply to such proceedings concerning land. In *Arndt* v. *Griggs*, 134 U. S. 316, 327, it is said to be established that "a State has power by statute to provide for the adjudication of titles to real estate within its limits as against non-residents who are brought into court only by publication." In *Hamilton* v. *Brown*, 161 U. S.

256, 274, it was declared to be within the power of a State " to provide for determining and quieting the title to real estate within the limits of the State and within the jurisdiction of the court, after actual notice to all known claimants, and notice by publication to all other persons." I doubt whether the court will not take the further step when necessary, and declare the power of the States to do the same thing after notice by publication alone. See *Huling* v. *Kaw Valley Railway & Improvement Co.* 130 U. S. 559, 564; *Parker* v. *Overman*, 18 How. 137, 140, 141 *et seq.* But in the present case provision is made for notice to all known claimants by the recorder, who is to mail a copy of the published notice to every person named therein whose address is known. § 32. We shall state in a moment our reasons for thinking this form of notice constitutional. See further *Cook* v. *Allen*, 2 Mass. 462, 469, 470; *Dascomb* v. *Davis*, 5 Met. 335, 340; *Brock* v. *Old Colony Railroad*, 146 Mass. 194, 195.

But it is said that this is not a proceeding *in rem.* It is certain that no phrase has been more misused. In the past it has had little more significance than that the right alleged to have been violated was a right *in rem.* Austin thinks it necessary to quote Leibnitz for the sufficiently obvious remark that every right to restitution is a right *in personam.* So as to actions. If the technical object of the suit is to establish a claim against some particular person, with a judgment which generally, in theory at least, binds his body, or to bar some individual claim or objection, so that only certain persons are entitled to be heard in defence, the action is *in personam,* although it may concern the right to or possession of a tangible thing. *Mankin* v. *Chandler,* 2 Brock. 125, 127. If, on the other hand, the object is to bar indifferently all who might be minded to make an objection of any sort against the right sought to be established, and if any one in the world has a right to be heard on the strength of alleging facts which, if true, show an inconsistent interest, the proceeding is *in rem.* Freem. Judgments, (4th ed.) § 606 *ad fin.* All proceedings, like all rights, are really against persons. Whether they are proceedings or rights *in rem* depends on the number of persons affected. Hence the *res* need not be personified and made a party defendant, as happens with the ship in the admiralty; it need not even be a tangible thing at all, as

sufficiently appears by the case of the probate of wills. Personification and naming the *res* as defendant are mere symbols, not the essential matter. They are fictions, conveniently expressing the nature of the process and the result, nothing more.

It is true as an historical fact that these symbols are used in admiralty proceedings, and also, again merely as an historical fact, that the proceedings *in rem* have been confined to cases where certain classes of claims, although of very divers sorts, — for indemnification for injury, for wages, for salvage, etc., — are to be asserted. But a ship is not a person. It cannot do a wrong or make a contract. To say that a ship has committed a tort is merely a shorthand way of saying that you have decided to deal with it as if it had committed one, because some man has committed one in fact. There is no *a priori* reason why any other claim should not be enforced in the same way. If a claim for a wrong committed by a master may be enforced against all interests in the vessel, there is no juridical objection to a claim of title being enforced in the same way. The fact that it is not so enforced under existing practice affords no test of the powers of the Legislature. The contrary view would indicate that you really believed the fiction that a vessel had an independent personality as a fact behind the law. Furthermore, naming the *res* as defendant, although a convenient way of indicating that the proceeding is against property alone, that is to say, that it is not to establish an infinite personal liability, is not of the essence. If, in fact, the proceeding is of that sort, and is to bar all the world, it is a proceeding *in rem*.

Then as to seizure of the *res*. It is convenient in the case of a vessel, in order to secure its being on hand to abide judgment, although in the case of a suit against a man jurisdiction is regarded as established by service without the need of keeping him in prison to await judgment. It is enough that the personal service shows that he could have been seized and imprisoned. Seizure, to be sure, is said to be notice to the owner. *Scott* v. *Shearman,* 2 W. Bl. 977, 979. *Mankin* v. *Chandler,* 2 Brock. 125, 127. But fastening the process or a copy to the mast would seem not necessarily to depend for its effect upon the continued custody of the vessel by the marshal. However this may be, when we come to deal with immovables there

would be no sense whatever in declaring seizure to be a constitutional condition of the power of the Legislature to make a proceeding against land a proceeding *in rem.  Hamilton* v. *Brown*, 161 U. S. 256, 274.  The land cannot escape from the jurisdiction, and, except as security against escape, seizure is a mere form, of no especial sanctity, and of much possible inconvenience.

I do not wish to ignore the fact that seizure, when it means real dispossession, is another security for actual notice.  But when it is considered how purely formal such an act may be, and that even adverse possession is possible without ever coming to the knowledge of a reasonably alert owner, I cannot think that the presence or absence of the form makes a constitutional difference; or rather, to express my view still more cautiously, I cannot but think that the immediate recording of the claim is entitled to equal effect from a constitutional point of view.  I am free to confess, however, that, with the rest of my brethren, I think the act ought to be amended in the direction of still further precautions to secure actual notice before a decree is entered, and that, if it is not amended, the judges of the court ought to do all that is in their power to satisfy themselves that there has been no failure in this regard before they admit a title to registration.

The quotations which we have made show the intent of the statute to bind the land, and to make the proceedings adverse to all the world, even if it were not stated in § 35, or if the amendment of 1899 did not expressly provide that they should be proceedings *in rem.*  St. 1899, c. 131, § 1.  Notice is to be posted on the land just as admiralty process is fixed to the mast.  Any person claiming an interest may appear and be heard. § 34.

But perhaps the classification of the proceeding is not so important as the course of the discussion thus far might seem to imply.  I have pursued that course as one which is satisfactory to my own mind, but for the purposes of decision a majority of the court prefer to assume that in cases in which, under the constitutional requirements of due process of law, it heretofore has been necessary to give to parties interested actual notice of the pending proceeding by personal service or its equivalent in order to render a valid judgment against them, it is not in the power of the Legislature, by changing the form of the proceeding from an action *in personam* to a suit *in rem*, to avoid the

necessity of giving such a notice, and to assume that under this statute personal rights in property are so involved and may be so affected that effectual notice and an opportunity to be heard should be given to all claimants who are known or who by reasonable effort can be ascertained.

It hardly would be denied that the statute takes great precautions to discover outstanding claims, as we already have shown in detail, or that notice by publication is sufficient with regard to claimants outside the State. With regard to claimants living within the State and remaining undiscovered, notice by publication must suffice of necessity. As to claimants living within the State and known, the question seems to come down to whether we can say that there is a constitutional difference between sending notice of a suit by a messenger and sending it by the post office beside publishing in a newspaper, recording in the registry, and posting on the land. It must be remembered that there is no constitutional requirement that the summons, even in a personal action, shall be served by an officer, or that the copy served shall be officially attested. Apart from local practice, it may be served by any indifferent person. It may be served on residents by leaving a copy at the last and usual place of abode. When we are considering a proceeding of this kind, it seems to us within the power of the Legislature to say that the mail, as it is managed in Massachusetts, is a sufficient messenger to convey the notice, when other means of notifying the party, like publishing and posting, also are required. We agree that such an act as this is not to be upheld without anxiety. But the difference in degree between the case at bar and one in which the constitutionality of the act would be unquestionable seems to us too small to warrant a distinction. If the statute is within the power of the Legislature, it is not for us to criticise the wisdom or expediency of what the Legislature has done.

We do not think it necessary to refer to the elaborate collection of statutes presented by the Attorney General for the purpose of showing that the principle of the present act is old.*

---

* The Attorney General cited: Ala. Code, 1896, §§ 690, 3165. Sts. Ark. 1894, §§ 2851–2855, 2859, 5418. 3 Cal. Code, §§ 756, 757, 759, 766, cls. 1–3. Sts. Col. §§ 3350, 3351, 3358, 3753, 3759. Gen. Sts. Conn. 1888, §§ 945,

Although no question is made on that point, we may mention that an appeal is given to the Superior Court with the right to claim a jury. In our opinion, the main objection to the act fails. See *Shepherd* v. *Ware*, 46 Minn. 174; *People* v. *Simon*, 176 Ill. 165; *Short* v. *Caldwell*, 155 Mass. 57, 59; *Loring* v. *Hildreth*, 170 Mass. 328.

The other objection to the constitutionality of the statute is with regard to the powers and duties of the recorder and assistant recorder. It is said that they are given judicial powers after the original registration, although not judicial officers under the Constitution. The act of registration is the operative act to convey title, § 50; and by the act of 1898 the assistant recorder does it unless in doubt. §§ 53, 55, 57, 58, 61, 62, 63. It is said that as his decision affects title it must be judicial. But here again it is necessary to use a certain largeness in interpreting broad constitutional provisions. The ordinary business of registration is very nearly ministerial. There is no question to be raised or which can be raised. If there is a question, either raised by any

---

946. Rev. Sts. Fla. §§ 1493, 1495. Ga. Code, 1895, §§ 3577, 4893, cls. 1–3; § 4976, cls. 1–8. Rev. Sts. Idaho, 1887, §§ 4561, 4564, 4565, 4574, cls. 1–3; § 4595. Sts. Ill. c. 22, §§ 7, 43; c. 41, §§ 18–20, 22–25, 27, 34, 35, 38; c. 106, §§ 7–10, 35. Rev. Sts. Ind. 1894, § 320, cls. 4, 5; §§ 2491, 2494. Iowa Code, 1897, §§ 3538, 4228, 4229, 4236. Rev. Sts. Maine, 1883, c. 88, § 22. Sts. Maine, 1895, c. 80, §§ 1, 3–6; c. 85, § 49. Md. Code Pub. Gen. Laws, 1888, art. 16, §§ 111–115. Sts. Mich. 1882, §§ 6744–6746, 7860, 7861, 7880, cls. 1–3. Sts. Minn. 1894, §§ 5771, 5817, 5818, 5839–5842. Miss. Code, §§ 498, 499, 518, 1703–1706, 3421, 3424. Mo. Code, 1896, §§ 395, 400, 401, 468, 1364–1368, 1737. 2 Mont. Code, 1895, §§ 1348, 1351, 1361, cls. 1–3. Comp. Sts. Neb. 1895, § 5675. Pub. Sts. N. H. c. 243, §§ 1–5, 8, 10–12. Sts. N. J. 1881, c. 176, §§ 1, 2; 1893, c. 142, §§ 1, 2. Sts. N. Y. 1890, c. 503, §§ 1–7. N. Y. Code Civil Procedure, § 438, cls. 1, 5; §§ 1541, 1582, 1979, 2518, 2523. Sts. N. C. 1887, c. 284, §§ 1–3. Sts. Ohio, §§ 5053, 6416, 6419. Gen. Sts. Oregon, 1892, §§ 426, 427, 432, cls. 1–3. 1 Brightly's Purdon's Digest, p. 606, § 185; 2 Brightly's Purdon's Digest, p. 1639, § 5; p. 1641, § 16; 3 Pepper & Lewis' Digest, p. 504, § 8; p. 507, § 12. Gen. Sts. R. I. 1896, c. 265, §§ 8, 16, 17, 24–26. Rev. Sts. S. C. 1893, §§ 2438–2440, 2444. Sts. So. Dak. 1899, §§ 6598, 6607, cl. 2; § 6696. Tenn. Code, 1896, §§ 3826, 3828, 5018–5021, 5023, 5040, cls. 1–3. Rev. Sts. Texas, 1895, arts. 1821–1830. Sts. Vt. 1894, §§ 2549–2551. Va. Code, 1887, §§ 2400–2402. Wash. Code, § 5066, cls. 1–3; §§ 5557, 5558, 5560, 5561. W. Va. Code, 1891, c. 42, §§ 6, 7; c. 79, §§ 1, 4; c. 124, §§ 11, 12. Sts. Wis. 1898, §§ 1197, 1208, 2612, 3102, 3116, cls. 1–3; §§ 3186, 3196. Rev. Sts. Wyo. 1887, §§ 3009, 3010.

party in interest or occurring to the assistant recorder, it is to be referred to the judge for decision. § 53. But whatever may be thought of the original act, by amendment even the ordinary business is to be done only " in accordance with the rules and instructions of the court." St. 1899, c. 131, § 8. Under this amendment registration is the act of the court. The fact that it may be done by the assistant recorder under general orders when there is no question is not different from the power of the clerk to enter judgment in cases ripe for judgment under a general order or rule of the Superior Court. It should be observed that by § 55 the production of the owner's duplicate certificate whenever any voluntary instrument is presented for registration is conclusive authority from the registered owner for the entry of a new certificate or the making of a memorandum of registration, and that a registration procured by presenting a forged certificate, etc., is void.

Finally, it is said that there is no provision for notice before registration of transfers or dealings subsequent to the original registration. It must be remembered that at all later stages no one can have a claim which does not appear on the face of the registry. The only rights are registered rights, and when land is brought into the registry system there seems to be nothing to hinder the Legislature from fixing the conditions upon which it shall be held under that system. *People* v. *Simon,* 176 Ill. 165, 176. By § 45, the obtaining of a decree of registration, which is a voluntary act, is an agreement running with the land that the land shall be and remain registered land and subject to the provisions of the act. Furthermore, in deciding whether substantial justice is done it is to be borne in mind that ordinary cases will present no question at all. It is contemplated, as we have said, that if there is a question to be discerned it shall be referred to the court, and of course that the court will order notice to any party interested. The act shows throughout the intent that no one shall be concluded without having a chance to be heard, and, although some of its methods are new to this Commonwealth, we cannot say that the precautions as to notice are insufficient in substance or form.

*Petition denied.*

LORING, J.   I dissent from the opinion of the majority of
the court, and think it proper to state the reasons which have
brought me to the opposite conclusion.

It will be necessary to add to the statement of the general
scope of the act, which is given in the opinion, by setting forth
with some particularity those provisions, which, in the opinion
of the majority of the court, sufficiently secure to those having
adverse interests, that opportunity to be heard in defence of
their rights of property, which is guaranteed to them by the
constitutional provisions, that they shall not be deprived of their
property except by due process of law or the law of the land.
Fourteenth Amendment of the Constitution of the United States.
Massachusetts Declaration of Rights, Art. 12.

By St. 1898, c. 562, §§ 31 and 32, notice of the application is
to be issued by the court in a form specified in the act addressed
to all known persons who claim an adverse interest and " to all
whom it may concern," and the return day of the notice is to be
not less than twenty nor more than sixty days from the date of
the notice.

This notice is to be served (1) by publication " in some news-
paper published in the district where any portion of the lands
lie " (§ 31) ; (2) by posting it " in a conspicuous place on each
parcel of " the land in question fourteen days before the return
day (§ 32) ; and (3) by mailing a copy " to every person named
therein whose address is known," within one week after publi-
cation in the newspaper.   The posting of the notice is to be per-
formed by a sheriff or his deputy (§ 32) ; the publication and
mailing by the recorder of the court (§§ 31, 32) ; and the return
of the former and the affidavit of the latter are made by § 32
" conclusive proof of such service."

It is provided that by the description in the notice " to all
whom it may concern," " all the world are made parties defend-
ant and shall be concluded by the default and order " (§ 35),
which, by the terms of § 36, " shall first be entered against all
persons who do not appear and answer " on the return day.

Thirty days are allowed for an appeal from a decree in favor
of the applicant (§ 14), and, on the expiration of that time, by
the express provisions of § 38, the decree, confirming and regis-
tering the applicant's title, " shall not be opened by reason of

the absence, infancy, or other disability of any person affected thereby, nor by any proceeding at law or in equity for reversing judgments or decrees," except only in case the decree was procured by the fraud of the applicant and rights of innocent third persons have not intervened.  § 38.

The peculiarities of the act consist : first, in the fact that it bars or may bar the true owner, by a decree in a proceeding had in his absence, of which he did not in fact have notice, and to which he is not named as a party ; second, in the fact that the notice to be given to those who are named therein is inappropriate and inadequate to bring home to them knowledge of the proceeding and enable them to appear and defend their right ; third, in the fact that the return and affidavit of service by the sheriff and the recorder cannot be shown to be either false or incorrect ; and fourth, in the fact that the decree made in that proceeding, unlike any other judgment or decree known to the law, is final and not subject to be attacked directly or collaterally, even if made in the absence of the true owner and without the true owner having in fact received any notice of the proceeding.

The Chief Justice upholds the statute upon the ground that the proceeding is a proceeding *in rem ;* if it be such a proceeding, it is true that no person need be named as party respondent, and no notice beyond publication need be given.  But some of the other justices. who concur in the opinion prefer to uphold the statute upon the ground that the opportunity to appear and be heard afforded by the notice here provided is not so far different from that afforded by personal service, or its equivalent, in an action *in personam,* as to forbid the Legislature adopting it.  On what ground the majority, who deny that this is a proceeding *in rem,* place their conclusion that those not named as respondents either in the application or in the notice are barred, is not explicitly stated.

I will first deal with the question of the notice to be given to known respondents, that is, to those named in the notice issued by the court.  It is patent that one having an adverse interest is not sure to receive notice of the proceeding, and to receive that notice in time to be heard.  He may not see the notice posted on his own land ; the parcel of land may be, for example,

woodland, and many thousand acres in extent; or the owner may be properly absent from the county for the fourteen days in question, or he may have given possession of the land to a tenant, and therefore properly leave it unvisited; or he may be a remainderman, and have no immediate right of entry, and certainly no likelihood of seeing a notice posted on the land; again, his interest in the land may be a right of way over, or of light and air in, the land of his neighbor, or an easement in the nature of an equitable restriction upon the height or position of buildings to be erected and maintained thereupon; in that case the notice would be posted on his neighbor's land, and there is certainly no likelihood that he would see a notice posted there. One publication in one newspaper in the district where the land lies, to be made "immediately upon the filing of the examiners' opinion, or the applicant's election, as the case may be," (§ 31,) satisfies the statute, and nothing but the statement of that fact is necessary to show that such service of the notice is not certain to reach all named respondents. The service by mail may be made at any time within seven days after publication in the newspaper. The mail is a good messenger to carry a communication to one whose identity and exact address are known, as is the case where one writes to another with whom he is in regular correspondence, but it is not a good messenger to use in conveying notice to strangers whose identity and address are not necessarily known, and must be ascertained *pro hac vice;* this is recognized in the act when it provides that the notice is to be mailed, not to all respondents named in the notice, but to "every person named therein whose address is known." § 32. Had the provisions required the notice to be mailed to every one named, the practical result would probably have been the same; for the recorder has no means of knowing the identity and proper address of each respondent, and the provision that the affidavit of the recorder in the matter of mailing copies of the notice shall be conclusive, takes away from the applicant any temptation to use extraordinary diligence in furnishing to the recorder the exact name and address of those whose interest it will be, if brought in, to defeat the object which he seeks to obtain by bringing his application.

More than that, the mail was originally devised as a means

of transmitting messages in business and social life, and not of serving notices of proceedings which may divest one of his property, and it has heretofore been treated as such by the public. A man not in business may reasonably absent himself from the Commonwealth in travelling for pleasure, and direct that all communications addressed to him shall be forwarded to him at specified places where he expects to go, but where he later decides that it is not his pleasure to go; it is probably within the experience of every one that many letters so forwarded are never received.

But the decisive objection to the provisions of the act as to notice to named respondents lies deeper than considerations of this nature alone; and it does not depend upon the question whether service by mail is as likely to reach the respondent as service at the defendant's last and usual place of abode, as the opinion would seem to assume.

Each and every statute of Massachusetts, whether passed in the time of the Colony, the Province, or the Commonwealth, authorizing a judgment on default based on any but personal service, has given to the defendant, who did not in fact have notice of the proceedings, and therefore no opportunity to be heard before the judgment was rendered, a right to have the judgment vacated on a writ of review. " Such judgments in this State are treated as valid until reversed, for the reason that the parties have an adequate remedy by review or writ of error." Wells, J., in *Salem* v. *Eastern Railroad*, 98 Mass. 431, 448.

It is definitely settled in other connections, that a right of appeal, or a right to a review, is sufficient to render constitutional a judgment, which, but for the right to that appeal or review, would be void, as not securing to the defendant the rights guaranteed to him by the Constitution. *Jones* v. *Robbins*, 8 Gray, 329. *Holmes* v. *Hunt*, 122 Mass. 505, 516. *Foster* v. *Morse*, 132 Mass. 354.

The first statute in Massachusetts authorizing a judgment on default on any but personal service was the Colony Act of 1644. That act provided that in case property of the defendant was attached, the notice, or, as it is now termed, the separate summons, might be served upon the defendant by leaving the same " at his house or place of usual abode," with a proviso that if

the defendant was at the time of service out of the jurisdiction, the case should be continued for a term before execution issued; and no execution should then issue until the plaintiff gave security to respond to the defendant "if he shall reverse the judgment within one year, or such further time as the court shall permit." Anc. Chart. 50. It is a fact of some interest that this is the origin in this Commonwealth of writs of review; and in this connection it is of no little importance that the origin of writs of review was to give to defendants who, being served under the statute and being absent from the colony at the time of service, did not know of the proceedings, an opportunity to have the judgment made in their absence vacated, if they had a good defence to the original claim.

This provision was re-enacted in 1700–1701 without substantial change, and was then extended to writs of dower and *scire facias*; it was then provided in the interest of the absent defendant that "no real estate taken in execution granted upon such first judgment shall be alienated or past away until after the expiration of the said twelve months, or after a new tryal brought within the said space of twelve months, to the intent that restitution thereof may be made in case as aforesaid." Prov. St. 1700–1701, c. 20; 1 Prov. Laws, (State ed.) 447, 448.

In 1726 the provisions of the original act were extended to the service of a capias when no attachment was made, and in 1797 to writs of ejectment, error, review, to real actions, and generally to all civil actions, "wherein the law does not require a separate summons to be left with the defendant." St. 1797, c. 50, §§ 1–5. The provisions of this act have since been re-enacted without substantial change until this day. Rev. Sts. c. 90, §§ 41, 45, 48; c. 92, §§ 3, 4, 6, 8; c. 99, § 17. Gen. Sts. c. 123, §§ 25, 28; c. 126, §§ 6–8, 10; c. 146, § 20. Pub. Sts. c. 161, §§ 31, 34; c. 164, §§ 6, 8, 10; c. 187, § 21.

This right of review had been previously extended to judgments rendered by justices of the peace and all inferior courts. St. 1791, c. 17, § 3; re-enacted in Rev. Sts. c. 99, § 27. Gen. Sts. c. 146, § 24. Pub. Sts. c. 187, § 25.

In 1820 the right to review a judgment was enlarged by giving the court power to issue a writ of review, even if the defendant was within the Commonwealth at the time of service at his

last and usual place of abode, provided he did not in fact have notice of the action, and applied for a review within a year after he first heard of it. St. 1820, c. 53. *James* v. *Townsend*, 104 Mass. 367. This act was re-enacted in Rev. Sts. c. 92, § 5 ; c. 99, §§ 18–20. Gen. Sts. c. 146, § 21. Pub. Sts. c. 187, § 22.

The Revised Statutes made a further provision in protection of the rights of a defendant in a real action who had not been personally served and against whom judgment had been rendered on a default in his absence, to wit, that if the judgment were reversed within a year the land should be restored. Rev. Sts. c. 92, § 9.

Without going more particularly into the statutes, it is enough to say that it has always been held in this Commonwealth that a judgment rendered on a default is binding on the defendant when service was made upon him personally. *Matthewson* v. *Moulton*, 135 Mass. 122. But if service was made at his last place of abode, or in any way other than by personal service, and he did not in fact have notice of the proceeding, it is not binding upon him. If provision for reopening the judgment is made by review or writ of error, his remedy is to have the judgment vacated by such a proceeding instituted directly for that purpose. *Hendrick* v. *Whittemore*, 105 Mass. 23. *Finneran* v. *Leonard*, 7 Allen, 54. If, however, the proceeding is not according to common law, so that error does not lie, the judgment may be attacked collaterally, and shown to be void for want of notice when invoked against the defendant. *Smith* v. *Rice*, 11 Mass. 507, 514. *Cook* v. *Darling*, 18 Pick. 393. Or if a judgment is rendered in another State against a citizen of this State, or in this State against a citizen of another State, it may be so attacked collaterally when suit is brought on it, because to compel him to have the judgment vacated by a writ of error, in which he must file a bond if he would obtain a stay of execution, is to impose a burden not warranted by the Fourteenth Amendment to the Constitution of the United States. *Needham* v. *Thayer*, 147 Mass. 536. And on this point generally see the exhaustive opinion of Judge Wells in *Salem* v. *Eastern Railroad*, 98 Mass. 431.

This doctrine that a defendant is not bound by a judgment rendered on default in his absence, based on a service other than personal service, is not peculiar to Massachusetts, but is of uni-

versal application; there is a difference in some States as to the remedy. In some jurisdictions the judgment will not be vacated if the defendant failed to receive notice through a false return of the sheriff, or an unauthorized appearance was made by an attorney, unless a suit on the sheriff's bond, or a suit against the attorney, fails in fact to give him an adequate remedy. *Walker* v. *Robbins*, 14 How. 584. In Connecticut a bill in equity lies to enjoin the enforcement of a judgment so obtained, though no fraud can be imputed to the plaintiff if the time prescribed by statute for vacating the judgment has expired. *Jeffery* v. *Fitch*, 46 Conn. 601. In New York it has been held that even after the time prescribed by statute for vacating such a judgment has expired, the court has inherent power to set it aside if made in the absence of the defendant. *Vilas* v. *Plattsburgh & Montreal Railroad*, 123 N. Y. 440. And there are cases in the Supreme Court of the United States, and in this Commonwealth, indicating that judgments may be vacated after the term by exercise of the court's inherent power independently of statute. *Ex parte Crenshaw*, 15 Pet. 119. *Waters* v. *Stickney*, 12 Allen, 1. *Gale* v. *Nickerson*, 144 Mass. 415. *Stickney* v. *Davis*, 17 Pick. 169.

But these cases all agree in this, that the judgment is not binding, certainly in the absence of an adequate remedy against the sheriff or the attorney who wrongfully appeared, and differ only as to what the remedy is. To that effect see Freem. Judgments, (4th ed.) § 98, where many cases are collected.

It comes therefore to this: whatever service other than personal service has been heretofore allowed, a judgment rendered in the absence of the defendant, so served, has never been held to be final, that is, not subject to be directly reviewed or collaterally attacked; but it has always been held that a defendant is entitled to escape from such a judgment in some way, either by a proceeding instituted directly to vacate it, or by attacking it collaterally when it is sought to be enforced against him. In other words, it has always been held that he shall have an opportunity to be heard after the judgment on the merits of the original claim, if he did not in fact have an opportunity to be heard before the judgment was rendered.

The state of the common law in this connection at the time

when the first settlers came to this country confirms this con-
clusion.   At that time no such thing was known as a judgment
against a defendant before he entered an appearance in court,
even if he had been personally served with process.   *Salem* v.
*Eastern Railroad*, 98 Mass. 431, 451.   *James* v. *Townsend*, 104
Mass. 367, 372.   Story, J., in *Picquet* v. *Swan*, 5 Mason, 35, 48.
At common law, if the defendant failed to obey the summons
served on him, whether by personal service or by service at his
house, or in real actions by posting notice on his land, the plain-
tiff's remedy was, where the injury was not accompanied by
force, to take out a writ or writs of judgment or *pone*, followed
by writs of *distringas*, under which the property of the defend-
ant was distrained to compel his appearance in court, and when
all his property had been distrained for that purpose the power
of the court was exhausted; in those cases where the injury was
accompanied by force the remedy of the plaintiff was to take
out a capias under which the defendant might be arrested; and,
if he secreted himself so that he could not be taken, a series of
writs could be taken out which resulted in his being declared an
outlaw, at which point the power of the court was at an end.
3 Bl. Com. 279, 287.   It was not until 1725, and by force of St.
12 Geo. I. c. 29, that judgment at law could be taken by default
for non-appearance of the defendant; it is of interest to note
that personal service of the writ was required by St. 12 Geo. I.
c. 29, to enable the plaintiff to take judgment by default.

It appears that at that time courts of equity did enter a decree
taking the bill *pro confesso;* but this was done only if the ser-
vice of the subpœna had been made on the defendant personally,
and had been followed by successive processes of contempt, in-
cluding sequestration.   3 Bl. Com. 444.   It was not until 1732,
and by force of St. 5 Geo. II. c. 25, that a decree taking the bill
*pro confesso* could be entered unless the subpœna had been per-
sonally served, and then only on proof that the defendant had
absconded to avoid service.

The principle that a defendant has the right to be heard on
review of a judgment, if he did not have notice of the proceed-
ings before judgment, is nothing more than the application to
judgments rendered on a default based on service not personal,
of the fundamental doctrine of the common law, which obtains

in England as well as in America, that no judgment can be rendered affecting another's rights of person or property without giving to that other an opportunity to be heard. "It is an essential principle of natural justice, that every man have an opportunity to be heard in a court of law, upon every question involving his rights or interests, before he is affected by any juridical decision of the question." *Commonwealth* v. *Cambridge,* 4 Mass. 627. To the same effect, see W.ells, J., in *Salem* v. *Eastern Railroad,* 98 Mass. 431, 447, 450 ; Devens, J., in *Shores* v. *Hooper,* 153 Mass. 228, 230, 231. "In our courts of law, you cannot obtain a judgment against a party, without entering an appearance for him, so that it shall seem as if he had appeared. He either does actually appear, or else you enter an appearance for him, according to the act of Parliament expressly made for that purpose; and made because it is considered an invariable maxim of law, that you cannot proceed against a party without his having the opportunity of being heard, and without his appearing in court, before a judgment shall be pronounced against him." Bayley, B., in *Capel* v. *Child,* 2 Cr. & Jerv. 558, 579. See to the same effect Parke, B., in *Bonaker* v. *Evans,* 16 Q. B. 162, 171, 172, where many authorities are cited.

In the light of the well established general principle, that no judgment can be rendered against a man until he has in fact had an opportunity to be heard, and the equally well established application of that general principle, that a defendant has the right to be heard in review of a judgment rendered under a statute authorizing judgment against him to be entered in his absence, if he did not in fact have notice of the proceedings before the judgment was rendered, which principle has obtained since the first statute authorizing service of process at the last and usual place of abode of the defendant, and was a component part of that act, and which has been universally observed since then, the constitutional provisions in question must be construed to guarantee to every citizen the right to be heard before judgment against him becomes irrevocable ; and if the judgment on default is based on any service of process, other than personal service on the defendant, provision must be made giving to a defendant, who did not in fact have notice of the proceeding before judgment, an opportunity afterwards to have it reversed or to attack

it collaterally, when it is set up against him. This act does not secure to those named in the application and notice as claiming adverse interests their constitutional right to be heard, and is, in my opinion, for that reason, unconstitutional and void.

But if personal service upon those named as defendants in the application and notice had been required, the act would have been unconstitutional and void because it undertakes to conclude those having an adverse interest, whether residents or non-residents, who are alleged not to be known to the applicant or the examiner, without making them parties defendant by name; the act provides that, though they be not named in the application or in the notice, they are made parties defendant by the insertion in the notice of the words " to all whom it may concern," and their rights are extinguished by their non-appearance in answer to that notice.

It is a principle of our jurisprudence, brought to this country by our ancestors and recognized here since then, that no person is barred by judgment or decree in judicial proceedings according to the course of the common law, in which the plaintiff asserts rights of property adverse to his, unless he is named as a party defendant.

I have already shown that every defendant named must have notice of the proceeding before he can be finally and irrevocably concluded thereby; the complement of that rule which, together with it, makes up the full measure of the vested rights of property in this connection guaranteed to each citizen by the Constitution, is the rule now under consideration, that no person is barred by a judgment or decree in a proceeding the effect of which is to strip him of vested rights of property, unless he is named as a defendant.

No principle could be introduced more dangerous to vested rights of property than the principle that this rule can be dispensed with in the discretion of the Legislature. If this rule is dispensed with, no sufficient incentive is left to the plaintiff to name as parties defendant those who have adverse interests; that is to say, those whose interests, if they are brought in, will lead them to do all in their power to defeat the object which the plaintiff seeks to obtain by bringing his suit. The only possible way of insuring to those having adverse interests an oppor-

tunity to be heard, is to require the plaintiff to name them as defendants under the penalty of their not being barred if not so named. If this penalty is removed, and a defendant is equally bound, whether named or not, there is not only no incentive to name as defendants those who claim an adverse interest, but the law has thereby offered to the plaintiff the greatest temptation not to name an adverse claimant if known, and not to use any diligence whatever to discover whether there are in fact persons who claim an interest adverse to his.

The effect of a judgment on a writ of right and of a fine, mentioned in the opinion, are not instances conflicting with the universality of the proposition that no person not named therein can be barred by a judicial proceeding. In those cases the world was barred, including all claiming an adverse interest though not named in the proceeding. But that was the effect of the lapse of the year and the day; they were not barred by the judgment apart from the lapse of time; they were barred by the lapse of time after a judgment. In other words, the judgment was sufficient to start the running of time against them, and they are barred by the operation of the principle of the statute of limitations.

The reference made in the opinion of the majority of the court to the statute of limitations makes it necessary to state in passing that the registration act cannot be supported on the grounds on which the statute of limitations quiets titles against all the world, or on any grounds deducible therefrom. It is unquestionably within the constitutional power of the Legislature to quiet the title to property by a statute of limitations. The principle of such a statute is that one, who is dispossessed of his property, must assert his ownership thereto by action within a specified time or be barred thereof; that is to say, cease to be such owner. But no statute was ever passed providing that an owner in possession of his property could be dispossessed thereof by any lapse of time, and no principle is deducible from the statute of limitations, which can justify such a statute, or a statute providing that, without naming him as a defendant, or without giving him notice, a court can by decree alone, unaided by the subsequent lapse of time, transfer his property to another.

But the main ground on which this provision of the act is

sought to be upheld is that of necessity.  It is said, " If it does
not satisfy the Constitution, a judicial proceeding to clear titles
against all the world is hardly possible, for the very meaning of
such a proceeding is to get rid of unknown as well as known
claims — indeed certainty against the unknown may be said to
be its chief end — and unknown claims cannot be dealt with by
personal service upon the claimants."  See p. 73.  It is undoubt-
edly true that the chief end of a proceeding to clear titles is to
get rid of the unknown, and that an unknown claim cannot be
dealt with by bringing notice of the proceeding home to the
claimant ; and it is true that it follows from that that a title can-
not be cleared by a judicial proceeding unaided by the lapse of
time.  But it does not follow that titles cannot be cleared.  The
lapse of time has been the means and the only means heretofore
used under our jurisprudence to clear titles against unknown
claimants ; under our Constitution it is, in my opinion, the only
means available therefor.  But it is of importance that it is avail-
able, and therefore that the argument of necessity fails.  It would
be within the constitutional power of the Legislature to enact,
that the effect of some such decree as is provided for in this act,
when properly proclaimed and served, should have the effect to
put the claimant in possession of the title so set up, and that if
that possession continued unbroken, and the decree setting up
the applicant's title remained in force unmodified, for a specified
time, all the world should be barred ; if the opinion of the Su-
preme Court of Illinois in this connection (*People* v. *Simon,*
176 Ill. 165, 177, 178) is not to be construed as confined to the
particular provisions of that act, it cannot be supported.

Such a requirement would practically enable any person to
protect his rights of property by an examination of the records
of the Court of Registration made during the specified term,
while under this act it is beyond the power of a person to pro-
tect his property from the effect of a decree not subject to be
reopened, and made in his absence without his knowledge.  If
he have an estate less than the fee, he can protect himself
neither by registering his own title nor by an inspection of the
records of the court.   He can do nothing but trust to the chance
that the applicant and the examiner may exercise sufficient care
to discover his claim, will learn his true name and address, and

that if his claim is discovered and the notice is properly addressed and mailed, it will reach him in time to enable him to appear in court before a decree has been rendered in his absence, which is beyond the power of any court to change when once it has been made. And if his original title is by prescription, he must trust to the intelligence and good faith of the applicant alone, for the examiner will not in his examination learn of such a title.

But there is an even more decisive answer to the argument of necessity, and that is this. The constitutional provision securing to the owner the right not to be deprived of his property except by due process of law, speaks to each citizen directly and personally. It is no answer when a person complains that he had no notice of the proceeding, in which the decree was made transferring his property to another, to say to him that ninety-nine other persons had notice, and that in ninety-nine cases out of a hundred a person would have notice. This provision is not a glittering generality to be explained away in any such manner to a man whose property has been divested by a decree made in his absence. It is a constitutional guarantee to each citizen; and no citizen can be deprived of the security given by the Constitution to his rights of property by any counterbalancing of the benefits derived by the multitude against the evil suffered by him; it is a constitutional guarantee to each citizen that his property shall not be transferred by the judgment of a court to another without his having had in fact an opportunity to be heard, no matter what the consequences may be. If it means anything short of that, it is not a constitutional guarantee; it is but a rule which may mean something or nothing, as the Legislature in its discretion may decide.

Moreover, this is a constitutional guarantee made to each and every citizen equally and alike. It is no fault of a person residing in the Commonwealth, who has an estate in the land covered by the application, that the applicant and the examiner did not know of his claim, if they did not know of it; much less if they allege that they did not know of it, when by the exercise of due care they would have known of it. It is strange, indeed, if a discrimination can be made between two residents within the Commonwealth, as to their constitutional right to be heard

before an irrevocable judgment is made concluding their rights of property ; and that that discrimination should finally depend on the negligence and good faith of their opponent, the applicant, and of the court examiner, and, as has been shown, in case of titles by prescription, on that of the applicant alone.   And yet that is the conclusion to which the court has come ; by the opinion of the court, the negligence of the applicant, in not discovering the claim of a resident to an interest in the land in question, precludes him from having the same right to be heard in defence of his rights of property in 'that land which his neighbor has, whose claim was discovered ; in the first case he is not named as a defendant, and that service of process which is required in actions *in personam* need not be made on him ; in the latter case the defendant is not barred unless such service of process as is required by actions *in personam* has been made.

There is no precedent for holding that the rights of persons not named as defendants are barred in any proceeding other than a proceeding *in rem*, and, for the reasons which I have given, I am of opinion that the constitutional rights of property guaranteed to each and every citizen equally and alike, require that that rule should not be abrogated.

To conclude this part of the discussion, I am of opinion that unless the proceeding under the registration act is to be supported as a proceeding *in rem*, it is without precedent, and is contrary to the rule heretofore universally recognized without any exception wherever the common law of England prevails, that no party is barred unless he in fact had an opportunity to be heard ; *Commonwealth* v. *Cambridge*, 4 Mass. 627 ; *Salem* v. *Eastern Railroad*, 98 Mass. 431 ; *Shores* v. *Hooper*, 153 Mass. 228, 230 ; *Capel* v. *Child*, 2 Cr. & J. 558 ; *Bonaker* v. *Evans*, 16 Q. B. 162 ; and I am of opinion that (unless the application is a proceeding *in rem*) a decree under that act, so far as it affects either the rights of defendants named and not personally served, or absent persons not named, is not due process of law.

I come now to the consideration of the constitutionality of the act as a proceeding *in rem*.

The act professes to be drawn on the theory that it authorizes a proceeding *in rem*, and it is plain that the service of the notice prescribed was taken from that used in proceedings in the Pro-

bate Courts; it is also plain that there was no attempt to secure
a compliance with the requirements of an action *in personam,*
either with respect to the service to be made upon those named
as defendants, or to the necessity of joining as parties defendant
all whom the plaintiff wished to have concluded by the decree.

Petitions for probate of a will afford no ground for holding
that the application under the act is a proceeding *in rem.*  Where
there is a fund in court for distribution, such as the proceeds of
a bankrupt estate or of the property of an insolvent corporation,
which is in process of being wound up, a general notice to whom
it may concern served by publication is sufficient to give the
court jurisdiction; and it is sufficient because in such cases the
object of the proceeding is not to divest an owner of a title which
he has, but to entitle him to share in the fund by proving his
right; petitions for the probate of a will (*Bonnemort* v. *Gill,* 167
Mass. 338) and inquests of office to establish an escheat (*Ham-
ilton* v. *Brown,* 161 U. S. 256) belong to this class.  No rights
of property guaranteed by the Constitution have vested in the
heir which the probate of the will or the inquest of office divests;
the purpose of such proceedings is to ascertain whether such
rights shall or shall not vest in the heir.  *Hamilton* v. *Brown,*
161 U. S. 256, 268.

More than that, it has never been decided that a decree ad-
mitting a will to probate was binding on all the world, or that a
statute could be constitutionally passed making it binding on all
the world.  In *Bonnemort* v. *Gill,* the only point decided was
that notice by publication gave the court jurisdiction to pro-
ceed with the petition for probate of the will, but it is per-
fectly well settled that the decree of the Probate Court in that
proceeding can be vacated on application at any time.  *Waters*
v. *Stickney,* 12 Allen, 1.  *Gale* v. *Nickerson,* 144 Mass. 415.
In *Hamilton* v. *Brown,* 161 U. S. 256, it was decided that a
statute of Texas was not in violation of the Fourteenth Amend-
ment, which made the decree of escheat therein provided for
binding on all the world after notice similar to that provided for
by the registration act under discussion.  This statute did not
go so far as the registration act; the statute directed that the
land covered by the decree of escheat should be sold, and pro-
vided that the proceeds of the sale should be paid to any person

who should subsequently prove himself to be the heir.   Pasch.
Dig. art. 3671.   *Hamilton* v. *Brown*, 161 U. S. 256, 264.   That
fact was mentioned in the opinion, but does not seem to have
been relied upon.   The opinion lays down the broad proposition
that the decree of escheat is conclusive on the ground that " if
such proceedings are had, after actual notice by service of sum-
mons to all known claimants, and constructive notice by pub-
lication to all possible claimants who are unknown, the final
determination of the right of succession, either among private
persons, as in the ordinary administration of estates, or between
all persons and the State, as by inquest of office or similar pro-
cess to determine whether the estate has escheated to the public,
is due process of law."   *Hamilton* v. *Brown*, 161 U. S. 256, 275,
so far as that reasoning goes, is open to the criticism (1) that
the right of succession among private persons in the ordinary
administration of estates is not finally determined by a decree of
the Probate Court; such a decree can be vacated at any time;
*Waters* v. *Stickney*, 12 Allen, 1; *Gale* v. *Nickerson*, 144 Mass.
415; and (2) that the right of succession as between all per-
sons and the State is not finally determined by an inquest of
office; office found in favor of the king did not result in a judg-
ment binding on all the world, it merely entitled him to the
possession of the *res;* it did not determine as against the world
his, or anybody's, right of property in the *res;* 3 Bl. Com. 259,
260; but the true owner could "avoid the possession of the
crown acquired by the finding of such office" by petition of right
disclosing new facts not found by the office, or by his *monstrans
de droit* relying on the facts as found, or by traversing the facts
found in favor of the king on leave obtained from the Court of
Chancery under its common law jurisdiction and from the Petty
Bag.   Stuart, V. C., in *In re Parry*, L. R. 2 Eq. 95, 97.   3 Bl.
Com. 258.   *Ex parte Webster*, 6 Ves. 809.   *Ex parte Gwydir*,
4 Madd. 281.   16 Vin. Abr. 86, pl. 1.

Blackstone's qualification (3 Bl. Com. 260) that an owner has
"for the most part" a right to traverse the facts is inaccurate;
and it is true, as I have stated, that the owner has the right in
every case to traverse the facts found by the inquisition.   It ap-
pears from an inspection of Sir Henry Finch's Discourse on
Law, 324, which Blackstone cites for the qualification, that if

the office was found for the king on a judgment of another court, whereby the owner was attainted of treason, he could not attack that judgment collaterally in a traverse to the inquisition; that in no way qualifies the right of a person to traverse the facts established by office found alone.   So far, therefore, as the decision in *Hamilton* v. *Brown* rests on the analogy of a final determination of the right of succession among private persons or between all persons and the State, it cannot be supported. But the decision was also put on the further ground that " when a man dies, the Legislature is under no constitutional obligation to leave the title to his property, real or personal, in abeyance for an indefinite time." This statement in the opinion, taken in connection with the provision of the statute, that the petition to have the escheat established could only be filed " when no letters testamentary or of administration appear to have been granted " in the county where his estate would be administered, (Pasch. Dig. art. 3658, *Hamilton* v. *Brown*, 161 U. S. 256, 265,) puts the case on the same footing as a fund in court, especially when it was stated in an earlier part of the opinion that "the whole object in proceedings for escheat, as in proceedings of administration, is to ascertain who are entitled to the estate of a deceased person." *Hamilton* v. *Brown*, 161 U. S. 256, 268. When one dies seised of land and no administration is taken out on his estate, it is plain that his estate is in the same position as a fund in court; the estate must be handed over to somebody; a general notice to all to come in and prove their right is sufficient, especially as the only practical effect is to change the land into money, it being expressly provided that any one entitled to the land shall be entitled on application to the proceeds derived by the State from the sale thereof.   Anything short of that might well result in large tracts of land, in such a State as Texas, remaining vacant to the detriment of the public welfare.   In the petition for escheat in *Hamilton* v. *Brown* it is alleged that on the death of Hamilton, who died seised, " there are no tenants upon said tract of land, and no person is either in actual or constructive possession of said tract of land or any part thereof, nor is there any person, claiming the estate in and to said tract of land, known to petitioner."   161 U. S. 256, 258.   There is nothing, therefore, in petitions for probate of a will or to establish

an escheat, which justifies an application under this act as a proceeding *in rem*.

The analogy of a libel *in rem* in admiralty is the analogy which has been most pressed as justifying this as a proceeding *in rem*, and the general proposition is laid down that if all the world are barred the proceeding is a proceeding *in rem*.

But the test whether particular proceedings are, or are not, proceedings *in rem*, depends upon whether they " are proceedings against property alone, treated as responsible for the claims asserted by the libellants or plaintiffs. The property itself is in such actions the defendant, and, except in cases arising during war for its hostile character, its forfeiture or sale is sought for the wrong, in the commission of which it has been the instrument, or for debts or obligations for which by operation of law it is liable." Field, J., in *Freeman* v. *Alderson*, 119 U. S. 185, 187; to the same effect see Miller, J., in *The Hine* v. *Trevor*, 4 Wall. 555, 571.

That this is the true test of whether a particular proceeding is or is not a proceeding *in rem* is shown by the admiralty rule as to possessory and petitory libels. If the purpose of the libel is the ascertainment of title or delivery of possession of a ship, or if the libel is filed to obtain security for the return of the ship from a voyage undertaken without the consent of the libellant being a part owner, a libel *in rem* does not lie; the libellant must make the owner a party and make service upon him as in an action *in personam* at law. Benedict's Admiralty Practice, § 395. Henry, Admiralty Jurisdiction & Procedure, § 29. There is therefore no authority to be found in admiralty for a proceeding *in rem*, where the purpose of the proceeding is the ascertainment and establishment of the plaintiff's title in the *res*.

Whether a particular proceeding is or is not a proceeding *in rem* depends upon the character of the right in the *res* sought to be enforced, which is given by rules of substantive law, when the purpose of the proceeding is to enforce a right of property and not to find an owner for property *in custodia legis*, as in case of a fund in court, the probate of a will, or an escheat for lack of heirs. It does not depend upon the fact that the plaintiff undertakes to enforce an ordinary right of property in the *res* against all the world; the test is not, are all the world barred,

but it is: Is it a proceeding to enforce a liability for which the *res* is liable irrespective of who owns it — such a liability that the *res* can be properly impleaded as the respondent who is liable? If it is, then a proceeding *in rem* lies, and all the world are barred; but if it is not such a proceeding, and is a proceeding to enforce an ordinary right of lien or of property only, the proceeding is not in its nature a proceeding *in rem*, and the Legislature cannot make it so by providing that all the world shall be barred. To say that the test of a proceeding *in rem* is the fact that all the world are barred, is to confuse cause and effect.

The only proceeding *in rem* known to the common law was an inquest of office, already referred to in connection with *Hamilton* v. *Brown*, 161 U. S. 256, " which is an inquiry made . . . concerning any matter that entitles the king to the possession of lands or tenements, goods or chattels," (3 Bl. Com. 258,) such as an attainder for treason, whereby the guilty party's property was forfeited to the king, or dying without heirs, whereby his lands escheated to the king; it also was the proper remedy to give the king possession of chattels, as in case of wreck, treasure trove, and the like, and forfeitures for offences, as, for example, the forfeiture of the property of a *felo de se*. 3 Bl. Com. 258, 259.

Forfeiture of lands was, by the Body of Liberties of 1641, Art. 10, declared not to exist in the Colony of Massachusetts, (*Commonwealth* v. *Mink*, 123 Mass. 422, 425, 426,) and most of the other prerogatives of the king mentioned by Blackstone never obtained here; but the principle of such inquests has been followed in case of forfeitures for offences, and there are several instances where the Legislature has declared that personal property should be forfeited if used illegally, and in such cases has properly provided for a proceeding *in rem* against it; familiar examples of this are to be found in Pub. Sts. c. 212, and in Pub. Sts. c. 100, §§ 30–39, providing that certain personal property used in violation of law, including implements used in gaming, and liquor kept for sale in violation of the statute, should be liable to be condemned; and many cases of proceedings *in rem* under those acts are to be found in the reports. A very instructive opinion in this connection by the present Chief Justice is to be found in *Commonwealth* v. *Intoxicating Liquors*, 163 Mass. 42. See also *Attorney General* v. *Justices of Municipal Court*, 103 Mass. 456; *Commonwealth* v. *Gaming Implements*, 119 Mass. 332.

Where the purpose of the proceeding is neither to find an owner for property *in custodia legis,* nor to enforce a right of such a nature that the *res* itself is properly impleaded as the responsible defendant, but the purpose of the proceeding is to deal with some one's right of property therein, as in case of a possessory or petitory libel in admiralty, the action is not an action *in rem,* but an action *in personam,* (Field, J., in *Freeman* v. *Alderson,* 119 U. S. 185, 187, 188, 190,) and all parties to be concluded thereby must be named as parties defendant.

In stating that the test, and the only test, as to whether a particular proceeding is, or is not, a proceeding *in rem* is this, " Are all the world barred? " the Chief Justice tacitly recognizes that if this proceeding is upheld as a proceeding *in rem,* it is within the constitutional power of the Legislature to provide that any property within the territorial limits of the Commonwealth, real or personal, corporeal or incorporeal, may be recovered, or any title therein or lien thereto established, in a proceeding in which no defendant need be named and no notice need be given except notice by publication ; if in this proceeding the Legislature can change the constitutional right to be heard by authorizing a proceeding *in rem,* it may authorize a proceeding *in rem* in any case involving property, and upon its doing so all the rest follows.   There is no escape from that conclusion.  There is nothing peculiar to this proceeding ; it is a proceeding which may be maintained by any person whether in or out of possession of land to establish the title which he claims thereto.

For the purposes of decision the choice lies between the view which I have set forth on the one hand, and on the other hand holding the doctrine that it is within the constitutional power of the Legislature, by changing the form of the proceeding from an action *in personam* to an action *in rem,* to avoid the necessity of complying with the requirements of an action *in personam* in those cases in which, under the constitutional requirements of due process of law, it has heretofore been necessary to name as parties defendant all persons, who are to be concluded by the judgment or decree, and to give to them actual notice of the pending proceedings, and an opportunity to be heard before a judgment, which is final and is not subject to be reviewed or attacked, can be rendered against them.

I will now consider the authorities and points principally relied on by the Attorney General, which I have not yet disposed of. The Attorney General seems to place his main reliance (1) on the statutes as to partition and the cases of *Cook* v. *Allen*, 2 Mass. 462, 470, *Dascomb* v. *Davis*, 5 Met. 335, and *Foster* v. *Abbott*, 8 Met. 596, which have arisen in Massachusetts under them; and (2) on the three cases of *Belcher* v. *M'hoon*, 47 Miss. 613, *Sullivant* v. *Weaver*, 10 Ohio, 275, and *Shepherd* v. *Ware*, 46 Minn. 174.

There is nothing in the statutes as to partition, or in the cases arising under them, to conflict with the conclusion to which I have come.

It will not be necessary to consider the statutes prior to the Revised Statutes. Prov. St. 1742–43, c. 24; 3 Prov. Laws, (State ed.) 42. St. 1783, c. 41. St. 1786, c. 53. Prior to the Revised Statutes, the act did not undertake to deal with rights of property, either finally or *prima facie ;* it dealt only with the right of possession, without regard to the right of an owner to enforce his right of property in a writ of right. *Dascomb* v. *Davis*, 5 Met. 335, 340. *Cook* v. *Allen*, 2 Mass. 470. Report of Commissioners on Revised Statutes, c. 103, note to § 30. By reason of the abolition in the Revised Statutes of the writ of right, the judgment on a petition for partition became equivalent to a judgment on a writ of entry, and it became necessary to protect the rights of property of those who were parties to the partition proceedings, whether they appeared or not; and the provisions, which were enacted in Rev. Sts. c. 103, §§ 33–47, were drafted by the commissioners for that purpose. It was provided that if two persons claimed to be entitled to a particular share, the court admitted one of them to act for that share in respect to the partition, and the assignment of land to that share was binding upon the owner thereof, whoever he might be, Rev. Sts. c. 103, § 41; but he was not concluded as to the ownership of the share so assigned, §§ 40–42; and if one claiming to be the owner of a share did not appear in the partition proceedings, he was bound by the assignment of land made to the share claimed by him, but could recover the land so assigned in a suit brought for that purpose, §§ 39, 40; if one who did not appear claimed to be part owner with another of a

.share, which was assigned to that other, he was bound by the assignment of land to the share, but could recover his part of the land so assigned, § 43 ; if one who did not appear claimed to own in severalty any part of the land divided, he was not bound by the partition proceedings, but could recover his land as if no partition proceedings had been had, § 38 ; if any person to whom land had been assigned was evicted, he could have a partition of the residue of the original land, § 46 ; and finally, if any part owner at the time of the partition was out of the State, he was not bound by the partition made, but could within three years after final judgment have a new partition, (§§ 34–36,) and full right of review by appeal and a writ of error could be had to any judgment, §§ 31, 32. *Foster* v. *Abbott,* 8 Met. 596, 599. As to the scope of the act, see Commissioners' Report on the Revised Statutes, c. 103, notes to §§ 36–40, §§ 40, 41, 42, 43, and Pub. Sts. c. 178, §§ 35–44.

Neither *Belcher* v. *Mhoon,* 47 Miss. 613, nor *Sullivant* v. *Weaver,* 10 Ohio, 275, are cases of much original importance, and in each State there are subsequent decisions under which the land registration act under discussion is unconstitutional. *Brown* v. *Levee Commissioners,* 50 Miss. 468. *State* v. *Guilbert,* 56 Ohio St. 575.

In *Belcher* v. *Mhoon,* the question of the constitutionality of the act was neither raised by counsel nor passed upon by the court. From the obscure report of *Sullivant* v. *Weaver,* it would seem to have been held in that case that a decree in equity, founded on process issued against the heirs of a specified decedent, was evidence in proving a chain of title. The sole question in the case was whether the plaintiff had made out a *prima facie* case of title in himself ; the constitutional question under discussion was not raised. It was objected in argument that the decree could not be collaterally attacked, and there was no suggestion that the defendant was an heir of the decedent.

*Shepherd* v. *Ware,* 46 Minn. 174, is an authority for the constitutionality of an act providing that, in an action to quiet title, unknown persons are bound by a notice to all the world, served by publication ; but even that decision is no authority for this act ; in that case any interested party had a year after judgment to appear and have it vacated. It is expressly stated in the opinion that the statute gave to such unnamed persons " the same right

to appear and defend before and after judgment" that was given to named defendants who were served by publication; and it appears by Sts. of Minn. 1894, § 5206, that a defendant brought in by publication could within one year after judgment appear and have the judgment vacated if it was wrongly made. For reasons already given, I think that opinion goes too far, though it does not go so far as this act.

The doctrine of *Arndt* v. *Griggs*, 134 U. S. 316, and *Short* v. *Caldwell*, 155 Mass. 57, does not reach the question under discussion. No State is deprived of its power to deal with property within its limits by the absence of the owner; consequently it is within the power of a State, in case a suit is brought against the non-resident in which the plaintiff seeks to affect the estate of the defendant, but not to entitle himself to a personal charge against the defendant, to proceed against his estate after giving him such notice as the circumstances permit. See Miller, J., in *Huling* v. *Kaw Valley Railway & Improvement Co.* 130 U. S. 559, 563, 564. But if title to real estate can be established against unknown claimants in a proceeding in which they are not named, and where service is made by publication only, it must be supported on a principle which is different in kind from the doctrine of those cases.

It is true that several statutes have been enacted of recent years which undertake to conclude unknown and unnamed defendants. St. 1882, c. 237. St. 1885, c. 283. St. 1889, c. 442. St. 1893, c. 340. St. 1897, c. 522. The constitutionality of these acts in the connection now under discussion has never been brought before the court; in *Short* v. *Caldwell*, 155 Mass. 57, the only objection raised was a lack of jurisdiction by reason of the non-residence of the claimants who appeared; in *Loring* v. *Hildreth*, 170 Mass. 328, the only constitutional objection set up was that constructive service cannot reach unborn parties, represented in fact by a guardian *ad litem*. It was conceded in argument that there might be constructive service on unknown persons (p. 329), and that was not considered by the court. How far these statutes are void is not now before the court; whether effect can be given to a decree under St. 1889, c. 442, and St. 1897, c. 522, when unascertained parties are before the court by a guardian, (as in *Loring* v. *Hildreth, ubi supra*,) or a

decree against unnamed parties under St. 1897, c. 522, can be supported as being against members of a class sufficiently represented in court, need not now be considered.

The conclusion which I have reached is in the main supported by *Webster* v. *Reid*, 11 How. 437 ; *State* v. *Guilbert*, 56 Ohio St. 575; *Brown* v. *Levee Commissioners*, 50 Miss. 468; *People* v. *Simon*, 176 Ill. 165.

In the words of Chief Justice Coke: " When authority and precedent is wanting there is need of great consideration, before that anything of novelty shall be established, and to provide that this be not against the law of the land." 12 Co. 75.

I am authorized to state that Mr. Justice LATHROP concurs in this dissent.